CLIFFORD H. AND KATHRYN GOLDSMITH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107241. Promulgated March 5, 1943.

*Michael Halperin, Esq.*, and *Julius Lefkowitz, C. P. A.*, for the petitioners.

*Paul P. Lipton, Esq.*, for the respondent.

712

OPINION.

Black, *Judge:* The issue in this proceeding is whether certain payments received in the taxable years by petitioner from Paramount were from the sale of capital assets as defined by section 117 of the

Revenue Act of 1938 and the corresponding section of the Internal Revenue Code, as petitioner contends, or whether these payments were received by petitioner as royalties from the granting of a license by petitioner to Paramount, as respondent contends. Respondent also contends that, even though the moneys in question were received from a sale, the sale was not of capital assets because the property sold was used in the trade or business of petitioner and was of a character subject to the allowance for depreciation provided in section 23 (l) of the Revenue Act of 1938 and the corresponding section of the Internal Revenue Code. The applicable statute is printed in the margin.[1]

The copyright of the play "Enter to Learn", of which petitioner is the owner, was granted to petitioner July 7, 1936. The assignment by petitioner to Paramount of exclusive motion picture and other related rights was dated August 30, 1938. Thus it will be seen that the assignment of motion picture and other related rights was made more than 24 months after the date of the granting of the copyright, and if the transaction was the sale of a "capital asset" as that term is defined by section 117, then the gain resulting therefrom would be taxable only to the extent of 50 percent thereof, as petitioner contends.

The argument of petitioner is based principally upon the assumption by him that the copyright itself was a capital asset; that a copyright is a bundle of rights such as the right to produce the play as a spoken drama on the legitimate stage, to produce it as a motion picture, or by television, and other similar uses.

Petitioner contends that when he sold and assigned to Paramount the exclusive rights to produce as a motion picture his play "Enter to Learn", later changed to "What a Life", he sold a capital asset, although concededly he sold only a part of the rights carried by his copyright. The Commissioner contends that, although the assignment in question effected a transfer to Paramount of exclusive motion picture rights, nevertheless the assignment amounted to a license and not a

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this title—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l);

* * * * * * *

(4) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such gain is taken into account in computing net income;

* * * * * * *

(b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

* * * * * * *

50 per centum if the capital asset has been held for more than 24 months.

sale, and, therefore, there was no sale of a capital asset. We think the Commissioner must be sustained.

The authorities cited by petitioner deal for the most part with the rights of an assignee of exclusive motion picture rights to bring a suit for infringement. One of the leading cases, cited by respondent, is to the contrary of the contention made by the petitioner. See *Witmark & Sons* v. *Pastime Amusement Co.*, 298 Fed. 470; affirmed *per curiam*, 2 Fed. (2d) 1020. In that case, the lower court, among other things, said:

> In relation to the right to sue for an infringement, a copyright is an indivisible thing, and cannot be split up and partially asssigned either as to time, place, or particular rights or privileges, less than the sum of all the rights comprehended in the copyright. Certainly the statute authorizing assignments of copyright contains no recognition of such partial assignments. Of course, such exclusive rights may be granted, limited as to time, place, or extent of privileges which the grantee may enjoy; but the better view is that such limited grants operate merely as licenses, and not as technical assignments, although often spoken of as assignments. [Citing cases.]

Petitioner cites in support of his view such cases as *Page & Co.* v. *Fox Film Corporation*, 83 Fed. (2d) 196, and *Photo-Drama Motion Picture Co.* v. *Social Uplift Film Corporation*, 220 Fed. 448. We have examined the cases cited by petitioner and we do not find them contrary to the law as laid down by the court in the *Witmark & Sons* case, *supra*.

But even if we assume that petitioner is correct in his argument that a copyright is such a bundle of rights that some of them can be separated from the others and separately sold so as to pass complete title to the part sold and not a mere license, we still do not agree with petitioner that he has sold a capital asset within the meaning of section 117. The decisions of the Board of Tax Appeals and the courts seem to be to the contrary. Cf. *Rafael Sabatini*, 32 B. T. A. 705, affd., 98 Fed. (2d) 753; *Estate of Alexander Marton*, 47 B. T. A. 184.

It is true of course that the *Sabatini* case and the *Marton* case above cited were not cases involving the question of whether income was to be taxed as ordinary income at 100 percent thereof, or was to be taxed as capital gain rates at the percentages provided by section 117. The *Sabatini* and *Marton* cases involved the question as to whether the income there involved was from sources within the United States or whether it was from sources without the United States. The determination of that question depended, however, upon whether the income was from royalties resulting from the granting of a license for motion picture rights to copyrighted works, or whether the income was from the *sale* of the asset itself.

As has already been stated, the determination in those two cases

was that the income in question was from royalties and not from the sale of the asset itself. We think that the same determination must be made in the instant case. We so hold.

The Commissioner also contends that, even though it be held that the transaction between petitioner and Paramount was a sale rather than the granting of an exclusive license for motion picture rights, nevertheless the sale was not that of a capital asset, as defined by section 117. Respondent's contention on this phase of the case is that section 117 excludes from the term "capital assets" property used in the trade or business of a taxpayer of a character which is subject to the allowance for depreciation provided in section 23 (1). In this contention we think respondent must also be sustained.

The trade or business of petitioner in both of the taxable years in question was that of author and playwright. That petitioner's copyrighted play "Enter to Learn", later changed to "What a Life", was used in his trade or business seems hardly open to question. In both of the taxable years petitioner's play was being produced on Broadway and petitioner received royalties therefrom which he reported as income, taking certain allowable deductions therefrom. We construe this as the use of the copyrighted play in petitioner's trade or business.

Article 23 (1)–3 of Regulations 101 is printed in the margin.[2]

In *John D. Fackler*, 45 B. T. A. 708, the Board held that the lease which was involved in that proceeding was property used in a trade or business and of a character subject to an allowance for depreciation and, therefore, was not a capital asset within the definition of section 117 (a) (1) of the Revenue Act of 1938.

Our decision in the *Fackler* case was affirmed by the Sixth Circuit on February 4, 1943. See 133 Fed. (2d) 509.

We hold that petitioner's copyright of his play was used in his trade or business in both taxable years. The fact that he did not take any deduction for depreciation thereon on his income tax returns for the two years in question is not controlling.

*Decision will be entered for respondent.*

---

[2] ART. 23 (1)–3. *Depreciation of intangible property.*—Intangibles, the use of which in the trade or business is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. Intangibles, the use of which in the business or trade is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the Commissioner. No deduction for depreciation, including obsolescence, is allowable in respect of good will.