SAX AND ROSE ELIZABETH ROHMER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4329. Promulgated June 6, 1945.

*Watson Washburn, Esq.,* and *Royal E. Mygatt, Esq.,* for the petitioners.

*Bernard J. Long, Esq.,* for the respondent.

**OPINION.**

ARUNDELL, *Judge*: The income in question was received by the petitioner, Sax Rohmer, through his United States agent, in payment for the first and second serial rights to a story written by him entitled "The Island of Fu Manchu." Petitioner takes the position that the income was derived from the sale of personal property, which is not taxable to him, and that if it was not derived from a sale the income does not fall within the category of "other fixed or determinable annual or periodical gains, profits, or income" because it was a lump sum payment. The applicable statute, section 211 (a) of the Internal

Revenue Code, is set out in the margin.[1] Petitioner retained the rights to book publication, motion picture production, and all other rights that were not specifically licensed to McFadden Publications, Inc. The respondent has determined that the money received by petitioner was a royalty and represents taxable income under the statute.

There are several cases dealing with the same problem which require us to view this transaction not as an outright sale of the property, but as the grant of a license for the use of the property in serial story form. There was no transfer of title necessary to a completed sale. The income is thus in the nature of a royalty. *Sabatini* v. *Commissioner*, 98 Fed. (2d) 753; *Ehrlich* v. *Higgins*, 52 Fed. Supp. 805; *Estate of Alexander Marton*, 47 B. T. A. 184; *Irving Berlin*, 42 B. T. A. 668. However, the petitioner argues that the decision in the *Sabatini* case, *supra* (the leading case), is limited by the decision in *Goldsmith* v. *Commissioner*, 143 Fed. (2d) 466; certiorari denied, 323 U. S. 711. In that case the taxpayer, a citizen and resident of the United States, assigned the motion picture rights in a play which he had written and he claimed that the payment received by him should be taxed as a gain from the sale of a capital asset. The Commissioner treated the payments as ordinary income and determined the deficiency for each year accordingly. We sustained the Commissioner and held that income was from royalties and not from the sale of the asset itself. We also sustained the Commissioner's alternative contention that, even if the payments were receipts from a sale of property, they were not from the sale of a capital asset as that term is defined in section 117 (a) (1) of the appropriate revenue act, since if any property was sold it was of a character subject to an allowance for depreciation provided for under the act. On review by the Circuit Court of Appeals for the Second Circuit our decision was affirmed. One of the judges was of the opinion that the payments were royalties, taxable as ordinary income, and two of the judges, in a concurring opinion, expressed the view that the payments were ordinary income because they were derived from "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" within the

---

[1] SEC. 211. TAX ON NONRESIDENT ALIEN INDIVIDUALS.

(a) No UNITED STATES BUSINESS OR OFFICE.—

(1) GENERAL RULE.—

(A) Imposition of Tax.—There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 11 and 12, upon the amount received, by every nonresident alien individual not engaged in trade or business within the United States, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 30 per centum of such amount, except that such rate shall be reduced, in the case of a resident of any country in North, Central, or South America, or in the West Indies, or of Newfoundland, to such rate (not less than 5 per centum) as may be provided by treaty with such country.

meaning of section 117 (a) (1), rather than a capital asset. On the basis of that concurring opinion and upon *General Aniline & Film Corporation* v. *Commissioner*, 139 Fed. (2d) 759, and *Commissioner* v. *Celanese Corporation of America*, 104 Fed. (2d) 339, petitioner rests his argument that he is not taxable on the income in question here.

The *Goldsmith* case was decided by the same court which earlier decided the *Sabatini* case, and, while the latter case is relied upon as authority for the conclusion that the payments were royalties, it is not mentioned in the concurring opinion. The only question before the court was whether the income should be taxed at 100 percent as ordinary income, or whether it should be taxed at the capital gains rate. Certainly, the court did not overrule the *Sabatini* case. Even so, see *Irving Berlin, supra*, where we had a similar question and where we held that there was no sale, but, at most, a mere license to use the literary material in motion picture production. The *General Aniline & Film Corporation* case and the *Celanese Corporation of America* case, *supra*, are clearly different from the case at bar. In each of those cases the courts found that the vendors had parted with all of their right, title, and interest in certain patents, so that the transactions amounted to completed sales. Hence, the payments received were part of the purchase price. Here, petitioner parted only with the right to use his story in serial form in a limited territory and retained all rights to its use in other forms. Since our problem here turns upon the question of whether the income was derived from royalties paid for a limited use of the property or whether it was derived from the sale of the asset itself, we are constrained by the decisions in *Sabatini*, *supra*, and *Marton, supra*, where the question has been directly decided.

Petitioner further contends that the income in question does not come within the statute as "other fixed or determinable annual or periodical gains or profits," since payment was made in a lump sum. We are unable to approve that argument. The fact that the sum agreed upon for the use of the serial rights was paid in that form does not change its character as a royalty. *Sabatini, supra.* In the *Ehrlich* case, *supra*, the total sum agreed upon was paid in three installments. In the *Marton* case, *supra*, a single payment was made. It is the nature of the income that is the controlling factor. See *Commissioner* v. *Raphael*, 133 Fed. (2d) 442; certiorari denied, 320 U. S. 735, dealing with a lump sum interest payment; and *DeNobili Cigar Co.* v. *Commissioner*, 143 Fed. (2d) 436, where the court said that distributions which are the equivalent of dividends under section 115 (g) are dividends within sections 143 and 211. The opinion in the *General Aniline* case, *supra*, is not contrary to the foregoing. As we have pointed out above, in that case the court found that title to the patents in question had passed from the vendor. They recognized, however, that the passing of title did not preclude the existence of royalties and went on

to say that the lump sum payment there considered was paid for the assignment and that such a payment is not covered by the statute. The payment in the instant case was made for a limited use of the serial rights only and did not constitute a completed sale, as was the situation in the *General Aniline* case.

We conclude that the payment in question was a royalty paid for the use only of the serial rights to petitioner's story and that the income, to the extent that it was derived from sources within the United States, is taxable to petitioner under section 211 (a).

Petitioner claims that 7 percent of the aforementioned payment represented the percentage of the total price which was allocable to the Canadian serial rights and that such portion of the income was not derived from sources within the United States and is not taxable to him. The applicable statute, section 119, subsections (a) (4) and (c) (4),[2] is set out in the margin.

The record does not show whether the petitioner's story was ever serialized by Liberty Magazine in either this country or Canada. On brief, however, petitioner states that it was so published by that magazine in the United States and in Canada in twelve installments, running from November 16, 1940, to February 1, 1941.

In support of his contention, petitioner introduced a publication entitled "Standard Rate Data Service," which indicates that for the six-month period ended December 31, 1940, the average United States circulation of Liberty Magazine was 2,523,152, as against the Canadian circulation of 180,206; that from January 1 to June 30, 1941, the United States circulation was 2,302,298 and the Canadian 190,622. Percentagewise, the ratio of the Canadian circulation to that of the United States is approximately .0666 for the first period and .0764 for the second period, with an average for the two periods of .0715. Other testimony was offered to the effect that the Canadian serial rights to the works of other lesser authors were worth from $1,000 to $1,500.

At the time the licensing agreement was settled upon, the parties apparently made no effort to segregate the value paid for the United

---

[2] SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.

(a) GROSS INCOME FROM SOURCES IN UNITED STATES.—The following items of gross income shall be treated as income from sources within the United States:

* * * * * * *

(4) RENTALS AND ROYALTIES.—Rentals or royalties from property located in the United States or from any interest in such property, including rentals or royalties for the use of or for the privilege of using in the United States, patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like property ; and

* * * * * * *

(c) GROSS INCOME FROM SOURCES WITHOUT UNITED STATES.—The following items of gross income shall be treated as income from sources without the United States:

* * * * * * *

(4) Rentals or royalties from property located without the United States or from any interest in such property, including rentals or royalties for the use of or for the privilege of using without the United States, patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like properties.

States rights from that paid for the Canadian rights. The circulation figures do not furnish a sufficient basis upon which we could determine that any of the income was derived from sources outside the United States. Since there is no basis upon which we could properly make any allocation, it follows that the full amount must be deemed to be from sources within the United States. *Estate of Alexander Marton, supra.*

We are next concerned with the problem of whether the petitioners are entitled to any personal exemption. They claim an exemption of $800 and rely upon section 214 of the Internal Revenue Code, which is set out in the margin.[3]

Nonresident alien individuals, by a distinction drawn in the Revenue Act of 1936 and subsequent acts through the code, are accorded different treatment depending upon whether or not they are engaged in a trade or business in the United States. Those not engaged in a trade or business or not having an office or place of business in the United States are taxable at a flat rate, depending upon their citizenship, on their gross income of the types covered by section 211, received from sources within the United States. This tax is in lieu of the normal tax and surtax payable by other taxpayers. But, if such nonresident alien individual has a gross income from sources within the United States of more than $24,000, a different treatment is available under section 211 (a) (2).

The exemption claimed by petitioners is shown by section 214, *supra,* to be a credit against net income. It is only on incomes covered by the above exception, that is, incomes in excess of $24,000 from United States sources, that nonresident alien individuals are allowed any credits or deductions. Section 19.214–1 (a) (1) and (2) of Regulations 103 [4] is set out in the margin. Petitioner does not claim the benefit of the exception and, since his gross income in the taxable year amounted to only approximately $11,000, it is apparent that he is not entitled to it.

---

[3] SEC. 214. CREDITS AGAINST NET INCOME.

In the case of a nonresident alien individual who is not a resident of a contiguous country, the normal tax exemption allowed by section 25 (a) (3) shall be only $500 and the surtax exemptions allowed by section 25 (b) (1) (B) and (C) shall not be allowed.

[4] SEC. 19.214–1. *Credits to nonresident alien individuals.—(a)* *No United States business or office.*—(1) *General rule.*—In general, a nonresident alien individual not engaged in trade or business in the United States and not having an office or place of business therein at any time during the taxable year is not allowed any credits under section 25, the tax being imposed upon the amount of gross income received.

(2) *Aggregate more than $21,600* [$24,000 for a taxable year beginning after December 31, 1939].—In the case of a nonresident alien individual (other than a resident of Canada) not engaged in trade or business within the United States and not having an office or place of business therein at any time during the taxable year and deriving in such year gross amount of fixed or determinable annual or periodical income from sources within the United States of more than $21,600, the credits allowed are those applicable in the case of nonresident alien individuals engaged in trade or business within the United States or having an office or place of business therein.

Finally, the petitioner claims that the 10 percent of the gross proceeds which was paid to his agent during the taxable year, by virtue of an exclusive contract, is not taxable as income to him. The theory advanced seems to be that of a partnership or joint venture. It is said that the legal title to the entire proceeds of the contract was in the agent from the beginning, and its only duty was to account to the petitioner for 90 percent thereof; that it was the agent's continued efforts that produced the income; and that the sale was made in the name of the agent.

We are not impressed by that line of argument. The facts show that Reynolds & Son agreed to act as petitioner's literary agent in this country and that the agent was to receive 10 percent of the receipts as a commission. Such fee is the same as that which is customarily paid literary agents. No unusual arrangements were brought to our attention and there is no evidence whatsoever that the parties were engaged in a partnership or joint venture of any sort. Had that been the case, it appears that the income would have been taxed without regard to section 211 (a).

What has been said above in connection with the claimed personal exemption applies to the commissions here considered. See Regulations 103, sec. 19.213–1 (a) (1) and (2). It follows that petitioners are not entitled to the claimed exemption, nor are they permitted to deduct the agent's commissions in computing their tax liability. See *Francois Lang*, 45 B. T. A. 256.

*Decision will be entered for the respondent.*