## FIELDS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 240, Docket 21835.

United States Court of Appeals
Second Circuit.

Argued May 8, 1951.

Decided June 1, 1951.

I. Herman Sher and Martin A. Roeder, New York City (I. Herman Sher, New York City, counsel), for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and Helen Goodner, Special Assts. to the Atty. Gen., for respondent, Commissioner of Internal Revenue.

Before SWAN, AUGUSTUS N. HAND and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The petitioner, a professional playwright, is the co-author of the plays: "My Sister Eileen" and "The Dough Girls" which were copyrighted in his name. After the plays had appeared on Broadway, he and his co-authors sold the exclusive motion picture rights in them to certain motion picture corporations, the price to be paid over a period of several years. The petitioner treated the income received from this source in the year 1943 as a gain from the sale of a capital asset. The Commissioner assessed the income so received as current income rather than as a capital gain and the Tax Court sustained his assessment. Petitioner appeals.

Both parties are now agreed that the transaction giving rise to this income was a sale, that the asset sold was depreciable and had been held for more than six months and that the rights sold did not constitute a capital asset within the meaning of §

117(a)(1) of the Internal Revenue Code, 26 U.S.C.A. § 117(a)(1). However, § 117(j) of the Code treats certain sales defined in § 117(j)(1) as if they were sales of capital assets though not within the terms of § 117(a)(1), and the petitioner contends that this transaction qualifies for such treatment by meeting the requirements of § 117(j)(1) which reads as follows:

"*Gains and losses from involuntary conversion and from the sale or exchange of certain property used in the trade or business.*

"*(1) Definition of property used in the trade or business.* For the purposes of this subsection, the term 'property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(*l*), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k) (1) or (2) is applicable."

Petitioner argues that except as to subclause (B) he has concededly met all the requirements of § 117(j)(1) of use in the business, depreciability, and holding period for treating this transaction as one giving rise to a capital gain under § 117(j). As to that subclause, he argues first that the rights sold were not "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" and, second, that if they were, subclause (B) only applied to real property because the statute reads "property * * * *and* real property * * * which *is* * *" and not "property * * * *or* real property which *is*," or "property * * * and real property which *are* * * *"

The contention that the motion picture rights were not held primarily for sale in the ordinary course of trade or business is without merit. The petitioner is a playwright, not a theatrical or motion picture producer or a publisher. The only way in which he could realize income from his copyrighted works was to license or sell to others the right to publish, stage or produce them. On similar facts, a majority of this court held contrary to petitioner's position in the concurring opinion of L. Hand, J., in Goldsmith v. Commissioner, 2 Cir., 143 F.2d 466, 467, certiorari denied 323 U.S. 774, 65 S.Ct. 135, 89 L.Ed. 619: "I do think that both [copyright and literary property] were 'property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.' That Clifford Goldsmith was in 'business' as a playwright, we have his own word for; and, although he had written only one play, he spent his time in exploiting it in various ways, in which he was very successful. This he did by licenses to producers of a stage play, by licenses to broadcasters and by the licenses to moving picture producers, whose proceeds are here in suit."

Property held for use as distinguished from property held for sale would comprehend such items as writing tools, novels or ideas acquired by the writer for dramatization, etc., rather than the finished, copyrighted product involved in this appeal.

There may appear to be some merit in petitioner's second point that subclause (B) only applied to real property but, though the question has never been authoritatively decided, the Congress,[1] the Treasury,[2] and

---

1. In 1950, Congress amended § 117(j) (1) by adding: "or (C) a copyright, * * * or similar property, held by a taxpayer described in subsection (a) (1) (C). * * * *"* § 210, Revenue Act of 1950, 1 U.S.Code Cong.Serv. p. 510, 26 U.S. C.A. § 117(j) (1) (C) which amendment would have been futile unless Congress had assumed that subclauses (A), (B) and (C) modified "property" as well as

"real property," for a copyright is not real property. See S.Rep.No.2375, 81st Cong., 2d Sess., pp. 43–44, 84.

2. Treasury Regulations 111 (§ 29.117.7): "Section 117(j) provides that the recognized gains and losses (a) from the sale, exchange, or involuntary conversion of property used in the trade or business of the taxpayer at the time of the sale, exchange, or involuntary

the Courts[3] have assumed that subclause (B) applied to depreciable personal property as well as to real property. Petitioner goes extensively into the legislative history of § 117(j) in an attempt to show such an assumption to be mistaken. We do not agree. Indeed, the Report of the Senate Finance Committee,[4] in our opinion, supports the assumption. Where the intent of Congress seems clear but is frustrated by the use of the singular in the statutory wording, we are permitted to read the statute in the plural.[5] See United States v. American Trucking Ass'n, 310 U.S. 534, 542, 543, 60 S.Ct. 1059, 84 L.Ed. 1345, and cases cited.

In view of the foregoing considerations we hold that subclause (B) of § 117(j)(1) modifies "property" as well as "real property" and that petitioner is not entitled to treat the income in question as if it resulted from the sale of a capital asset.

Order affirmed.

Swan, Circuit Judge, dissented.

conversion, held for more than six months, which is

(1) of a character subject to the allowance for depreciation provided in section 23(*l*), or

(2) real property,

provided that such property is not of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or is not held by the taxpayer primarily for sale to customers in the ordinary course of trade or business, and

(b) from the involuntary conversion of capital assets held for more than six months, and

(c) from timber held for more than six months * * *"

3. United States v. Bennett, 5 Cir., 186 F.2d 407; Albright v. United States, 8 Cir., 173 F.2d 339.

4. "The [revenue] bill defines property used in a trade or business as property used in the trade or business of a character which is subject to the allowance for depreciation, and real property held for more than 6 months which is not properly includible in the inventory of the taxpayer if on hand at the close of the taxable year or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." S.Rep.No.1631, 77th Cong., 2d Sess., p. 50.

5. "In determining the meaning of any Act of Congress, unless the context indicates otherwise—words importing the singular include and apply to several persons, parties, or things". 1 U.S.C.A. § 1.