**MISBOURNE PICTURES LIMITED et al.
v. JOHNSON.**

No. 276, Docket 22013.

United States Court of Appeals
Second Circuit.

Argued May 11, 1951.

Decided June 11, 1951.

Choate Byrd Leon & Garretson, New York City, Joseph H. Choate, Jr., Maurice Leon and Maurice Hahn, all of New York City, of counsel, for appellants.

Irving H. Saypol, U. S. Atty., New York City, Henry L. Glenn and Lawrence G. Greene, Asst. U. S. Attys., New York City, of counsel, for appellee.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This is an action for the recovery of income taxes for the year 1943 paid to the defendant collector. The plaintiffs are British corporations not engaged in trade or business in the United States. Pursuant to a contract they had made with Samuel Goldwyn, Inc., a New York corporation, the latter paid them in London, England, $201,000 ($40,000 and £40,000) upon which a tax of 30%, subject to withholding at the source, was collected by virtue of sections 231(a) (1) and 144 of the Internal

Revenue Code. A claim for refund thereof having been filed and no action taken thereon, the present suit was brought. It was tried to Judge Samuel H. Kaufman without a jury upon stipulated facts. In accordance with his opinion reported in D.C., 90 F. Supp. 978, the complaint was dismissed. The plaintiffs have appealed.

The primary question presented for decision is whether the sum paid to the foreign corporations is to be deemed, for tax purposes, payment of the purchase price for the sale within the United States of personal property or payment of royalties for the privilege of exhibiting in the United States a moving picture film produced by the appellants. If the transaction was a sale, the tax was illegally exacted; if it was a contract for royalties, as Judge Kaufman held, the judgment was correct.

Section 231(a) (1) of the Code, 26 U.S.C. 1946 Ed., lays a tax upon foreign corporations not engaged in trade or business within the United States. The tax is 30% of the amount received from sources within the United States "as interest * * * or other fixed or determinable annual or periodical gains, profits, and income". Section 119(a) (4) defines income from sources within the United States to include "royalties for the use of or for the privilege of using in the United States, patents, copyrights * * * and other like property". Section 144 provides for withholding of the tax on foreign corporations "in the same manner and upon the same items of income as is provided in section 143", which deals with the withholding of tax in the case of non-resident alien individuals. The applicable regulations are section 29.119–5, section 29.231–1 and section 29.143–2 of Regulations 111, 26 C.F.R. The last named section states specifically that "income derived from the sale in the United States of property, whether real or personal, is not fixed or determinable annual or periodical income," but royalties are.

The contract between the appellants and Samuel Goldwyn, Inc. is a lengthy document of fourteen sections. In consideration of Goldwyn's consent to allow the appellants to engage the services of a movie star, named David Niven, for a film to be produced by them in England, they agreed to produce the film [section 1], and upon its completion to deliver a print thereof to Goldwyn [section 2], and to give Goldwyn a ten day option "of acquiring the exclusive rights to distribute the said film in all parts of the world other than the British territory (as hereinafter defined) and Australasia on the terms hereinafter appearing" [section 3]. If the option were exercised, the appellants agreed to deliver to Goldwyn the original negative and sound track of the film, and Goldwyn was obligated to "advance" to the appellants £50,000, to be satisfied by payment of £40,000 and $40,000, but said sum of £50,000, "although referred to as an advance shall be recouped to Goldwyn solely out of the proceeds of the exploitation of the film * * *" [Section 4(a) (c) and (d).] On payment of said sum Goldwyn "shall be at liberty" to make contracts for distribution and advertisement of the film without consulting the appellants or to "convey any distribution rights to others in all parts of the world" except in the British territory and Australasia, but before making any outright sale of rights Goldwyn must give notice to the appellants and, if they produce a better cash offer, Goldwyn must accept it. [Section 4(e) and (h).] Moneys received by Goldwyn from distributors or assignees are to be divided 55% to the appellants and 45% to Goldwyn, but the appellants' 55% "shall be retained by Goldwyn until the aforesaid advance" of £50,000 "is recouped to Goldwyn thereout." [Section 4(g).] Goldwyn agreed to "use their best endeavors" in distribution of the film "for the benefit of all parties to this Agreement" and Goldwyn was privileged to re-edit the film, make changes in the negative and change the title [sections 4(f) and 10]. The appellants warranted "ownership of all distribution rights in the film" [section 5]. The contract also provided that monthly accounts should be rendered to an agent of the appellants and that they should have the right to inspect all distribution contracts and assignments. [Section 8.] Other pro-

visions dealt with the time and manner of making payment to the appellants of their share of the proceeds of exploitation of the film, and the final section provided that "This Agreement shall be construed and take effect according to the law of England." .

■ The appellants argue that the contract gave Goldwyn the option to acquire on payment of $201,000 (a) the original negative with sound track and (b) the exclusive right to exhibit the picture in the United States and throughout most of the rest of the world—a right, they say, which "might well have been implied if the transaction had been merely a transfer of the negative for cash." We cannot agree. The option was not to acquire the negative but to acquire "the exclusive rights to distribute the said film" within stipulated territory and upon stipulated terms. Section 3 of the contract. When the option was exercised the appellants were duty bound to deliver the negative and Goldwyn was obligated to "advance" the £50,000. The essential subject matter of the contract was the rights of distribution granted to Goldwyn, not possession of the negative. The latter without the former would have been of relatively little value to either party. Both parties expected to make money from Goldwyn's exercise of the grant of rights to distribute the film and it was obligated to endeavor "to secure good results" for the benefit of both parties. [Section 4(f).] While the appellants were not personally liable to return the "advance" payment, it was expected that Goldwyn would "recoup" the sum out of the appellants' share of the proceeds of distribution. Apparently the recoupment was accomplished very promptly. Hence the payment in substance became merely an advance payment of royalties for use of the film. As such it was taxable income.

■ Perhaps not all of the decisions respecting a transfer of less than all the rights in property of a limited life, such as patents, copyrights or literary property can be consistently reconciled.[1] But it seems unnecessary to discuss them in view of Commissioner of Internal Revenue v. Wodehouse, 337 U.S. 369, 69 S.Ct. 1120, 93 L.Ed. 1419, which we regard as decisive of the case at bar.[2]

■ Although only the income from sources within the United States is taxable and Goldwyn's license covered also other parts of the world, the appellants presented no basis for apportionment of the payment between the United States and other territory. Accordingly the entire payment was properly held taxable. Wodehouse v. Commissioner, 2 Cir., 177 F.2d 881; Rohmer v. Commissioner, 2 Cir., 153 F.2d 61, certiorari denied 328 U.S. 862, 66 S.Ct. 1367, 90 L.Ed. 1632; Molnar v. Commissioner, 2 Cir., 156 F.2d 924.

Judgment affirmed.

1. See Sabatini v. Commissioner, 2 Cir., 98 F.2d 753; Goldsmith v. Commissioner, 2 Cir., 143 F.2d 466, certiorari denied 323 U.S. 774, 65 S.Ct. 135, 89 L. Ed. 619; Rohmer v. Commissioner, 2 Cir., 153 F.2d 61, certiorari denied 328 U.S. 862, 66 S.Ct. 1367, 90 L.Ed. 1632; General Aniline & Film Corp. v. Commissioner, 2 Cir., 139 F.2d 759; Commissioner of Internal Revenue v. Celanese Corp., 78 U.S.App.D.C. 292, 140 F.2d 339.

2. It well may be that under the English law this contract would be construed as a sale of property rather than a license conditioned on payment of royalties. Withers v. Nethersole (H.L.1948), 1 All. E.R. 400. But of course that is not controlling on the question of taxation under our revenue acts. See dissenting opinion in Commissioner of Internal Revenue v. Wodehouse, 337 U.S. 369, 422–423, 69 S.Ct. 1120, 93 L.Ed. 1419.