FOSTER WHEELER CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26974, 27952. Promulgated April 6, 1953.

*John W. Matz, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The respondent determined the following deficiencies:

| Docket No. | Year | Kind of tax | Deficiency |
|---|---|---|---|
| 26974 | 1945 | Income | $3,554.98 |
| 26974 | 1945 | Excess profits | 391,504.86 |
| 27952 | 1946 | Income | 16,335.39 |

The petitioner contested that determination and alleged that it overpaid its tax for both years. In his pleadings the respondent claimed increased deficiencies for the year 1945. Most of the issues have been settled by the parties and the cases were consolidated for hearing and decision. The remaining issues concern the proper accounting treatment for tax purposes of certain royalties owed to and owed by the petitioner, the payment of which had been prohibited by an order of the Secretary of the Navy, pursuant to the Royalty Adjustment Act of 1942.

All of the facts have been stipulated and are so found. The petitioner is a corporation, organized and existing under the laws of the State of New York. It filed its tax returns for the periods involved herein with the collector of internal revenue for the second district of New York. It keeps its books and reports its income on the accrual basis of accounting. The petitioner was organized to engage in what is generally known as the "heavy goods industry." Among other things, it manufactured steam generators for marine use.

By a writing dated October 24, 1939, the petitioner and The Babcock & Wilcox Company (hereinafter referred to as Babcock) entered into a cross-licensing agreement, granting each other licenses under certain patents and patent rights. Each agreed to pay to the other a royalty of 2 per cent of the contract price of steam generators, covered by the other's patents, sold by it for marine use. During the years 1945 and 1946, the petitioner and Babcock each had in effect contracts with the United States Navy Department for the manufacture and sale to it of steam generators for marine use covered by patents under the cross-licensing agreement.

On June 30, 1945, the Secretary of the Navy, acting under the authority of the Royalty Adjustment Act of 1942 (56 Stat. 1013; 35 U. S. C. secs. 89–96) sent written notices to petitioner and Babcock, each as licensor and licensee, directing that no royalties, arising from the cross-licensing agreement, which were chargeable directly or indirectly to the Navy Department should be paid by the licensee to the licensor. The notices were effective as to sales made on or after April 1, 1945. In accordance with the provisions of the notice, the

petitioner and Babcock each segregated royalties at the rate of 2 per cent which would have been payable to the other company under the terms of their agreement.

The petitioner, pursuant to section 1 of the Royalty Adjustment Act of 1942, on or about July 10, 1945, requested a hearing before the Royalty Adjustment Board of the Navy Department (hereinafter called the Board), for the presentation of evidence having a bearing upon the rates or amounts of royalties to be fixed in accordance with the Act. After the exchange of correspondence over a period of several months, a hearing was set for January 24, 1946, on which date representatives of each of the companies appeared before the Board in Washington, D. C. The petitioner presented a memorandum outlining reasons why it considered that the royalties which it received were not excessive.

Thereafter, following a letter addressed by petitioner to the Chairman of the Board, on or about October 25, 1946, the Navy Department submitted to petitioner and Babcock a proposed settlement agreement. Petitioner and Babcock each rejected the proposal and sent certain suggested revisions to the Navy in November 1946. Conferences were held in Washington and correspondence was exchanged concerning the settlement of the dispute, with the result that on or about March 4, 1947, the Navy Department submitted a revised settlement agreement (based on a 1 per cent royalty) which was finally executed by all the parties on May 23, 1947.

Pursuant to the settlement agreement the notices issued by the Secretary of the Navy in 1945 were withdrawn. The petitioner received from Babcock payments of $94,962.62 and $42,987.88 representing royalties computed at the rate of 1 per cent for the period of April 1, 1945, through December 31, 1945, and the year 1946, respectively. The petitioner had accrued the amount for 1945 on its books for that year and had also reported it as income in its tax returns for 1945. The amount representing royalties for 1946 had been accrued on petitioner's books for that year but not reported as income. The petitioner later reported the amounts representing royalties for 1945 and 1946 as taxable income for the year 1947.

The petitioner also accrued on its books for 1945 and took as a deduction on its tax returns for that year the amount of $69,589.64. That amount represented petitioner's liability for royalties computed at the rate of 2 per cent, pursuant to the cross-licensing agreement of 1939, for the period April 1, 1945, through December 31, 1945. The petitioner did not sell any steam generators covered by Babcock's patents to the Navy in 1946; therefore, no liability for royalties could arise during that year. In accordance with the provisions of the settlement agreement, the petitioner, on or about May 29, 1947, paid

one-half of $69,589.64 to Babcock and the remaining one-half to the Treasurer of the United States.

The respondent urges that even though certain royalties payable to petitioner by Babcock were impounded in Babcock's possession by an order of the Secretary of the Navy, they should have been accrued by petitioner and included in its income computed at the rate of 2 per cent for the year 1945 and at the rate of 1 per cent for the year 1946. The petitioner maintains that accrual of such royalties in any amount was improper and that they should not have been included in its income for those years. The petitioner's argument is that its right to these royalties was being challenged by the Navy Department and until 1947, reasonable doubts existed as to whether it would be able to collect any of these royalties. Under such conditions, the petitioner asserts that accrual of the royalties in any year prior to 1947 was improper. We think that petitioner's contentions are correct.

Under the cross-licensing agreement between Babcock and itself petitioner was entitled to 2 per cent royalties on sales of steam generators for marine use which were covered by its patents. Babcock sold some steam generators to the Navy Department and the Secretary of the Navy, believing that the royalties were excessive, issued an order forbidding Babcock paying them to petitioner, pursuant to his power under the Royalty Adjustment Act of 1942. At that time, June 1945, petitioner's right to such royalties was seriously contested. Petitioner did not acquiesce in the determination of the Secretary of the Navy, and it requested a hearing for the purpose of attempting to establish its rights to the royalties payable to it under the terms of the agreement. There was, therefore, at the end of 1945 a real dispute between the Navy and petitioner over the right to royalties in the amount of $189,925.24 (computed at 2 per cent) or in any other amount for the period from April 1, 1945, through December 31, 1945. In view of that dispute petitioner was not required to accrue such royalties as income for 1945. *Cold Metal Process Co.*, 17 T. C. 916, affd. C. A. 6, November 21, 1952; *Boston Elevated Railway Co.*, 16 T. C. 1084, affirmed on another issue, 196 F. 2d 923 (C. A. 1) ; cf. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417.

In January of 1946, the Royalty Adjustment Board of the Navy Department held a hearing to allow petitioner to present its evidence showing that the royalties were not excessive. After the hearing, the Board suggested that it would be willing to settle the dispute by allowing royalties computed at the rate of 1 per cent. The petitioner indicated that it would find such proposal acceptable. However, it was not until 1947 that the parties were finally able to reach an agreement. During that whole period the royalties in dispute remained frozen by the order of the Secretary of the Navy. Since the dispute

continued through the year 1946 we think that an accrual of the royalties for 1946 in that year even if computed at the rate of 1 per cent would have been similarly improper. Although there may have been grounds for belief that the dispute would eventually be settled, by computing the royalties at that rate, such was by no means a certainty. Negotiations and conferences took place for well over a year prior to final settlement in 1947, and since the petitioner had no fixed right to obtain the royalties, it is correct in its contentions that the amounts were not includible in income until 1947. It was the continued existence of the dispute in its unresolved state that effectively precluded petitioner from receiving payment prior to that time. Cf. *Cold Metal Process Co.*, 17 T. C. 916, 932.

In his pleadings the respondent raised as an alternative contention, in the event we decide, as we have, that the royalties were not includible in petitioner's income until its right to them became fixed in 1947, that the petitioner should not be able to deduct in 1945 the royalties, computed at the rate of 2 per cent, which it owed Babcock under the cross-licensing agreement. We think that this argument is not a true alternative to the main issue and that, moreover, respondent's contention is erroneous. The royalty expense incurred by petitioner was not related to the royalty income which may have been due to it from Babcock. The right to deduct an expense accrued in the taxable year is not lost merely because it arises under a contract which produces income which is not accruable or reportable in that year. Under the contract with Babcock, petitioner was obligated to pay to Babcock a royalty of 2 per cent on steam generators covered by Babcock's patents which were sold by petitioner. In 1945, such royalties amounted to $69,589.64. The respondent contends that since this amount was subject to alteration by the Royalty Adjustment Act of 1942 and was in dispute, the deduction should be disallowed. The respondent is mistaken in his argument, however, since the liability of the petitioner was fixed and certain. The only question that was to be determined in proceedings under the Royalty Adjustment Act was whether the royalties were to be returned to the Government, if they were excessive, or whether they were to be paid to Babcock in accordance with the agreement. For under the provisions of the Act "a reduction in the rates or amounts of royalties * * * shall inure to the benefit of the Government by way of a corresponding reduction in the contract price * * * or by way of refund * * *." Royalty Adjustment Act of 1942, section 4 (35 U. S. C., sec. 92). It is clear, then, that the petitioner incurred an obligation during 1945 which represented a fixed liability and that it may appropriately be taken into account tax-wise in that year. Cf. *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516, 519.

*Decisions will be entered under Rule 50.*