DANIEL M. CORY AND MARGOT CORY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37209.   Filed January 31, 1955.

*Watson Washburn, Esq.*, for the petitioners.
*Maurice A. Stark, Esq.*, for the respondent.

OPINION.

TURNER, *Judge:* By an amendment to his petition, the petitioner has taken sharp departure from the representations on his return and the allegations in his original petition, to the effect that "Persons and Places" was given to him by Santayana in 1941 and that the $42,057.66 represented the proceeds of the sale by him of a capital asset, and now alleges that Santayana did not "complete the gift" of "Persons and Places" until May 21, 1945,[1] that the income therefrom in 1944 was that of Santayana, and such part of the "sales" proceeds as was received by him, the petitioner, in that year was received by gift from Santayana, and to him was not income. In the alternative, it is contended that if there had been a gift of the work to petitioner prior to its publication, the transaction with Scribner's was a sale and the gain was capital gain, and for the year 1944 petitioner, at the most, is chargeable with $12,000, the amount he was entitled to draw down under the tripartite agreement.

It is the position of the respondent that there was a completed gift of "Persons and Places" to petitioner prior to the November 10, 1942, contract for its publication, and that the income received by petitioner was ordinary income, his argument being that the transaction with Scribner's was a license, not a sale, of the property, and further, if it be held that the transaction was a sale, it falls within the ambit of *Joseph A. Fields*, 14 T. C. 1202, affd. 189 F. 2d 950, and the concurring opinion in *Goldsmith* v. *Commissioner*, 143 F. 2d 466, affirming 1 T. C. 711, in that it was the sale of property held primarily for sale to customers in the course of petitioner's trade or business of exploiting the said "Persons and Places." In the alternative, the respondent argues that the full $42,057.66 realized from the publication of "Persons and Places" by Scribner's represented compensation to petitioner for services rendered by him to George Santayana and, for that reason, is taxable to petitioner as ordinary income in 1944.

While there are some references in the writings or communications of Santayana, and in the testimony of petitioner at the time of the hearing herein which might supply a basis for the conclusion that there was a period of time in which an employer-employee relation-

---

[1] Although the amended petition alleging that there was no completed gift of "Persons and Places" had been verified by petitioner, it was his testimony at the trial herein that it had been, and still was, his view that a gift of the said work to him had been completed in 1941.

ship might have existed between Santayana and petitioner, we are convinced that such relationship, if it did exist, was not the basis and did not supply the consideration for the transfer of "Persons and Places" by Santayana to petitioner. The evidence, in our opinion, shows that Santayana intended to make a gift, and thought he had made a gift, of the work to petitioner, and further, that petitioner likewise so regarded the transaction. It is also clear, we think, that until Sturgis entered the scene and Scribner's received the communication from its attorney, Scribner's also thought an effective transfer of ownership had been made. There was a donor competent to make the gift and a donee capable of taking the gift. And in spite of obstacles which were quite difficult to surmount, there was an effective delivery. Certainly no one would question the acceptance by petitioner. We conclude and hold that prior to November 10, 1942, petitioner, by gift from Santayana, had become the owner of "Persons and Places." *Adolph Weil*, 31 B. T. A. 899, affd. 82 F. 2d 561; *Apt* v. *Commissioner*, 89 F. Supp. 361. It accordingly follows that the income received or realized from or on that work in the taxable year was that of petitioner.

Our next question is whether the income herein was capital gain, or ordinary income. For Federal income tax purposes, capital gain is as prescribed by Congress and results from the sale or exchange of a capital asset, and as defined by section 117 (a) of the Code, the term "capital assets" means "property held by the taxpayer * * * but does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

Petitioner, by gift from Santayana, had become the owner of the literary work "Persons and Places," and it was his purpose to exploit that property for profit. He was not in the publishing business and did not have the means for having the work published for his own account. The work was subject to copyright, however, and he could sell it, along with his rights under the copyright, for the best price obtainable, or grant a license thereon for such royalties as might accrue.

The law pertaining to copyrights appears as Title 17 of the United States Code, and secures to the owner of a copyright certain exclusive rights with respect to work copyrighted. These rights, which are set out in detail in section 1 of the statute, are of five classifications or groupings, and for the purposes here, may be stated as (a) the right to print, reprint, publish, copy, and sell the copyrighted work; (b) in case of a literary work, the right to translate into other languages or dialects, or to make any other version thereof; and in the case of a nondramatic work, to dramatize; and (c) the right to utilize the work for lecture purposes, to make or procure the making of transcriptions or records by which and from which, in whole or

in part, it may be produced or reproduced, and to plan or perform it in public for profit, and to exhibit, represent, produce, or reproduce it in any manner or by any method whatsoever.[2] The rights under (d) are pertinent, if the work is a drama; and those under (e), if it be a musical composition.

It is, of course, commonplace that the owner of a copyrighted property may grant a license to use or exercise some or all of the rights in and to such property, or he may make a full and complete disposition or sale of the property and his rights with respect thereto. Over the years, numerous cases have been before the various courts wherein the applicability of certain sections of the internal revenue law have turned, in whole or in part, on the question whether the grant of a right or rights in and to a copyrighted work was or was not a sale of the property covered in the transaction. *Rafael Sabatini*, 32 B. T. A. 705, affirmed in part and reversed in part, 98 F. 2d 753; *Irving Berlin*, 42 B. T. A. 668; *Estate of Alexander Marton*, 47 B. T. A. 184; *Clifford H. Goldsmith*, 1 T. C. 711, affd. 143 F. 2d 466; *Sax Rohmer*, 5 T. C. 183, affd. 153 F. 2d 61; *Pelham G. Wodehouse*, 8 T. C. 637, revd. 166 F. 2d 986, which was in turn reversed at 337 U. S. 369; *Joseph A. Fields*, 14 T. C. 1202, affd. 189 F. 2d 950; *Herman W. Shumlin*, 16 T. C. 407; *Misbourne Pictures Limited* v. *Johnson*, 189 F. 2d 774, affirming 90 F. Supp. 978; *Paul Reece Rider*, 16 T. C. 1456, affd. 200 F. 2d 524; *Richard W. TeLinde*, 18 T. C. 91; and *Herwig* v. *United States*, (Ct. Cl.) 105 F. Supp. 384. Compare *E. Phillips Oppenheim*, 31 B. T. A. 563. In none of the cases prior to *Goldsmith* v. *Commissioner, supra*, and more particularly Judge Hand's concurring opinion therein (except as to that part of the decision of this Court in *Rafael Sabatini*, which covered the grant of motion picture rights for a lump sum), have we been able to find any pronouncement or holding that the grant of rights in and to a copyrighted work, even though exclusive, was a sale, where the grant made covered less than all of the owner's rights in and to the said work. Subsequent to the *Goldsmith* case, however, the Court of Appeals for the Fourth Circuit, the Court of Claims, and this Court have in certain cases adopted the views expressed in Judge Hand's opinion. The present position of the Court of Appeals for the Second Circuit, as will appear hereafter, is not to us so clear.

In *Joseph A. Fields, supra*, and *Herwig* v. *United States, supra*, there were grants for lump-sum considerations of exclusive motion picture rights, in the one case to two plays and in the other to a novel. In neither case did the grantor have any further claim against the grantee, or any retained interest in or against the rights so granted, or in the proceeds or profits from the exploitation of the copyrighted

---

[2] While it is common knowledge that in recent years a considerable number of motion pictures have been based on the lives of individuals of note, we do not know, from the record, whether the story of Santayana's life would, or would not, attract such interest.

work under the said rights, and it was held in both cases that the transaction was a sale. In the opinions, it was noted that, even though legal title remained in the grantor, it was a naked title and could be exercised for the benefit of the transferee only. The *Fields* case was affirmed by the Court of Appeals for the Second Circuit, as above indicated, but, at the outset, the court observed that "both parties are now agreed that the transaction giving rise to this income was a sale" and devoted its opinion to the consideration of the question whether the property or property rights conveyed had been held by the grantor primarily for sale to customers in the course of his trade or business. Previously, in *Sabatini* v. *Commissioner, supra,* the same court had reversed the holding of this Court, to the effect that a grant by Sabatini of exclusive worldwide motion picture rights to certain of his literary works for a lump-sum consideration was a sale, and held that the grant was a license, not a sale. On another issue, it had affirmed the holding that a grant of exclusive publishing rights for the United States to certain of Sabatini's works, with a retained right, such as we have in the instant case, to share in the proceeds from the sale of the published works, was a license, and not a sale. It is to be noted that in the opinion in the *Goldsmith* case, written by Judge Chase, the prior opinion of the court in *Sabatini* was cited as an authority, whereas in the concurring opinion of Judge Hand the *Sabatini* case was overlooked or ignored, and in the subsequent opinion of the court in the *Fields* case there was no indication of any thought or intention of modifying or overruling its pronouncements or holdings.

In *Pelham G. Wodehouse, supra,* this Court citing *Sax Rohmer, supra,* which had followed the holding of the Court of Appeals in the *Sabatini* case, was of the view that a grant by the author of the exclusive right to publish certain of his stories serially in America for a lump-sum consideration was a license, not a sale. The Court of Appeals for the Fourth Circuit, at 166 F. 2d 986, reversed that decision and held that the transaction was a sale. The decision of the Court of Appeals was in turn reversed by the Supreme Court, at 337 U. S. 369, as previously noted. The question as decided in the Supreme Court was whether or not the lump-sum payment constituted "fixed or determinable annual or periodical gains, profits and income" from sources within the United States, within the meaning of section 211 of the Internal Revenue Code of 1939. The Court pointed out that under the 1934 Act and the regulations promulgated pursuant thereto royalties had been construed as being such income. It was of the opinion that Congress intended, in section 211, which was enacted in the Revenue Act of 1936, to continue royalties as such income, and held that the lump-sum payments were taxable under that section. In deciding that question, however, it pointed out that if the transaction giving rise to the "royalties" had been a sale, the decision would, under

the statute, have been to the contrary, and in the course of its opinion, it cited the opinion of the Court of Appeals for the Second Circuit in the *Sabatini* case with apparent approval.

More recently, the Court of Appeals for the Second Circuit had before it the case of *Misbourne Pictures Limited* v. *Johnson, supra,* on appeal from the United States District Court for the Southern District of New York (90 F. Supp. 978). In that case, an English corporation had granted to an American corporation the exclusive distribution rights, in all the world except British territory and Australasia, of certain motion pictures produced by the English corporation. The moneys received by the grantee in connection with its distribution of the film were to be divided between the grantor and the grantee on a specified percentage basis. A lump-sum advance payment was made, subject, however, to its recoupment by the grantee from the percentages which should later become payable to the grantor. The question was as to the nature of the lump-sum advance payment, and in its opinion affirming the District Court, the Court of Appeals stated the question as follows:

If the transaction was a sale, the tax was illegally exacted; if it was a contract for royalties, as Judge Kaufman held, the judgment was correct.

The court did observe, however, that:

Perhaps not all of the decisions respecting a transfer of less than all the rights in property of a limited life, such as patents, copyrights or literary property can be consistently reconciled.[1] But it seems unnecessary to discuss them in view of Commissioner of Internal Revenue v. Wodehouse, 337 U. S. 369, * * * which we regard as decisive of the case at bar.

[1] See Sabatini v. Commissioner, 2 Cir., 98 F. 2d 753; Goldsmith v. Commissioner, 2 Cir., 143 F. 2d 466, certiorari denied 323 U. S. 774, 65 S. Ct. 135, 89 L. Ed. 619; Rohmer v. Commissioner, 2 Cir., 153 F. 2d 61, certiorari denied 328 U. S. 862, 66 S. Ct. 1367, 90 L. Ed. 1632; General Aniline & Film Corp. v. Commissioner, 2 Cir., 139 F. 2d 759; Commissioner of Internal Revenue v. Celanese Corp., 78 U. S. App. D. C. 292, 140 F. 2d 339.

In the instant case, petitioner in the contract of November 10, 1942, did purportedly grant to Scribner's and their successors "the exclusive right to publish the said work in all forms in the United States and Canada during the terms of copyright and renewals thereof," but both petitioner and Wheelock, Scribner's representative in the transaction, testified that the contract did not, and was not intended to, cover all of petitioner's publishing rights even for the United States and Canada, in that it was intended and understood that the serial publishing rights were not exclusively granted. And it appears further that petitioner, with full knowledge on the part of Scribner's, entered into a transaction in 1943, the year after the contract with Scribner's, for the serial publication by the Atlantic Monthly of three of the chapters of "Persons and Places," from which he realized $1,000, and no part thereof was shared with Scribner's under its contract.

Exclusive of serial rights, however, we still do not think there was a complete or outright disposition by petitioner to Scribner's of his entire remaining interest or interests in the United States and Canadian publishing rights, but rather that the grant was of the right to use or exercise those rights in the United States and Canada for the purpose of exploiting the literary work "Persons and Places" for profit on behalf of both Scribner's and petitioner. It is true that aside from the serial rights as indicated Scribner's was granted the sole and exclusive right to do the publishing and selling of the work in the United States and Canada and to determine the style and manner in which it should be published, but in consideration therefor, it obligated itself to do those things at its own expense and to share with the petitioner the proceeds from the sale of the published copies and the profits from publication in other than book form according to the percentages agreed upon and specified in the contract. No amount was payable in any event and any and all realization by petitioner was dependent entirely upon sales of the printed copies or the existence of profits from publication other than in book form. Stated otherwise, there was no personal obligation or liability ever on the part of Scribner's to pay any sum to petitioner if, after its publishing of the work, it could make no sales and there was an absence of profits from its publication in other than book form. Scribner's could assign its rights under the contract, but such an assignment would necessarily carry with it the obligations to petitioner as well, and there was no provision whereby, as the result of the payments prescribed or otherwise, petitioner's retained interest or right to participate in the sales proceeds and profits would ever become the property of Scribner's or its assignee. And even though the publishing rights which were granted were exclusive, the interest of petitioner therein continued to be one of substance and not merely a naked title, as in the *Fields* and *Herwig* cases, exercisable only for the benefit of Scribner's. On the facts here, an infringement would adversely affect not the profits of Scribner's alone, but those of petitioner as well, and the fact that an infringement proceeding might be in the name of petitioner or Scribner's would not actually be of any moment.

In our opinion, essential elements of a sale were lacking, and we conclude and hold that the transaction between petitioner and Scribner's for the publication of "Persons and Places" was a license, not a sale.

From the above, it is apparent, we think, that the cases of *Joseph A. Fields, supra*, and *Herwig* v. *United States, supra*, are not this case, and whether or not the views expressed in the opinions therein as to *Commissioner* v. *Wodehouse, supra*, correctly reflects the views of the Supreme Court in that case, *Fields* and *Herwig* are not, in our opinion, controlling here.

Similarly, *Paul Reece Rider, supra*, and *Richard W. TeLinde, supra*, do not indicate or require a conclusion in the instant case contrary to that expressed above, although the consideration for the contract in each of those cases, as in this case, was based upon the sales of the book or books to be published. In the *Rider* case, we found from the evidence that the books in question and the rights under the copyright were held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, and expressly refrained from deciding whether the contract for publication of the books was a sale or a license. In affirming, the Court of Appeals, at 200 F. 2d 524, stated that it did not retry issues presented to the Tax Court, but limited its decision to the issue decided below. In *Richard W. TeLinde*, we concluded and held that where the fair intendment of the contract as a whole was the disposition or sale by the taxpayer of all of his rights in the property, the "mere payment of a consideration on the basis of sales" was not alone sufficient "to transmute what would otherwise be a sale into a mere license." In the instant case, and for the reasons above, we have concluded from a consideration of the transaction as a whole that a license, and not a sale, was effected. We accordingly do not reach the attendant question in *TeLinde*, where the gearing of the amount of the consideration to sales remained as the sole basis for concluding that the transaction was a license and not a sale.

Having concluded that the transaction between petitioner and Scribner's for the publication of the literary work "Persons and Places" was a license, not a sale, it follows that the amounts received and realized by petitioner during the taxable year from such publication constituted ordinary income, and not capital gains, and we so hold.

In passing, it may be noted that in the current tax year and hereafter, questions comparable to that herein will not arise either with respect to cases involving copyrights or cases involving patents, since Congress, by amendment to the Internal Revenue Code, in the Revenue Act of 1950, has specifically dealt with the nature of copyrights as capital assets, and has also legislated specifically with respect to patents in the Internal Revenue Code of 1954. Section 117 (a) (1) (C) of the Internal Revenue Code of 1939, as amended, and sections 1221 (3) and 1235 of the Internal Revenue Code of 1954.

The remaining issue is as to the amount of income received by petitioner under the contract with Scribner's in 1944. Petitioner's right to the royalties payable by Scribner's in connection with the publication of "Persons and Places" was at all times during 1944 in dispute and undetermined. Pursuant to the tripartite agreement, however, he did have the right to receive, and did receive, the sum of $12,000 therefrom. His rights to the remainder were not resolved un-

til 1945. Such being the case, we conclude and hold that of the royalties paid by Scribner's under the contract of November 10, 1942, only $12,000 was income to petitioner in 1944. *Foster Wheeler Corporation*, 20 T. C. 15. *Bonham* v. *Commissioner*, 89 F. 2d 725, affirming 33 B. T. A. 1100, and *Heiner* v. *Gwinner*, 114 F. 2d 723, on which respondent relies, are not in point.

Reviewed by the Court.

*Decision will be entered under Rule 50.*