PHOTO–DRAMA MOTION PICTURE CO., Inc., v. SOCIAL UPLIFT FILM CORPORATION.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 102.

1. COURTS ⬅291 — UNITED STATES COURTS — JURISDICTION — CASES UNDER COPYRIGHT LAWS.

Irrespective of citizenship, the federal courts have jurisdiction of suits to enforce rights under the copyright statutes.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §·833; Dec. Dig. ⬅291.]

2. COPYRIGHTS ⬅39—EXTENT OF RIGHTS ACQUIRED—DRAMATIZATION.

A copyright covering a novel gives the holder the exclusive right to dramatize the novel in the usual form, or in the form of a motion picture play.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 39; Dec. Dig. ⬅39.]

3. COPYRIGHTS ⬅7—SUBJECTS OF COPYRIGHT—SEPARATE DRAMATIZATIONS.

Under the Copyright Act, as amended in 1912, the rights to dramatize a novel in the usual form and in the form of a motion picture play are separable, and there may be a copyright for each dramatization.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 5; Dec. Dig. ⬅7.]

4. COPYRIGHTS ⬅46—ASSIGNMENTS—FAILURE TO RECORD—EFFECT.

Under Copyright Act, § 44, providing that every assignment of copyright shall be recorded in the copyright office within three months after its execution, in default of which it shall be void as against any subsequent purchaser or mortgagor for a valuable consideration without notice, whose assignment has been duly recorded, an unrecorded assignment of the motion picture rights in a copyrighted novel was void as against a subsequent assignee without notice, whose assignment was duly recorded.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 44; Dec. Dig. ⬅46.]

5. COPYRIGHTS ⬅47—ASSIGNMENTS—FAILURE TO RECORD—NOTICE.

Where an assignee of the moving picture rights in a copyrighted novel was told by the assignor that he had licensed T. to reproduce the story as a drama, but that he had not assigned the motion picture rights, the

assignee was not charged with notice that the motion picture rights had been assigned to T.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 45; Dec. Dig ☞47.]

**6. COPYRIGHTS ☞36—EFFECT OF COPYRIGHT ON LITERARY RIGHTS.**

One obtaining a statutory copyright of a book or play has no common-law literary property rights left, notwithstanding Copyright Act, § 2, providing that nothing therein shall annul or limit the right of the author or proprietor of an unpublished work, at common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor, as that section is intended only to indicate that the statute does not displace the common-law right.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 37; Dec. Dig. ☞36.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from an interlocutory order granting a preliminary injunction restraining defendant from making, selling, etc., motion pictures based upon the book or novel entitled "The House of Bondage." The opinion of the District Court will be found in 213 Fed. 374.

H. R. Guggenheimer, of New York City, for appellant.

A. E. Stevenson, of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. **[1-3]** The suit is brought to enforce complainant's rights to exclusive production of certain motion pictures, under the provisions of the United States copyright statutes. Of such an action, irrespective of citizenship, the federal courts have jurisdiction. The facts shown are as follows:

One Kauffman wrote a novel, entitled "The House of Bondage." He assigned his right to copyright the same to Moffatt Yard & Co. Moffatt Yard & Co. duly secured copyright. That gave them exclusive rights to publish and sell the novel; also to make dramatizations of it, whether in the usual form for acting on the stage of a theater, or in the more recent form of a motion picture play. Moffatt Yard & Co. assigned all dramatization rights to Kauffman. He then had exclusive right to make dramatizations of either kind. Moreover, since the amendment of the Copyright Act (in 1912, passed subsequent to the Kalem Case, 222 U. S. 55, 32 Sup. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285), these rights were separable; there might be a copyright for a dramatization of the old sort (acted on a stage), and also a copyright for a dramatization of the new sort (arranged in motion pictures).

Kauffman on April 30, 1913 (or possibly July 12, 1913), made an assignment to one Totten. It is contended that this covered his "exclusive dramatic rights, including moving picture rights." The preamble to the written assignment submitted to him by Totten so states, but the phraseology of Kauffman's letter of July 12, 1913, in which he agreed to the assignment, leaves it doubtful whether he intended to include anything except a drama, which Totten had written founded

on the book. For the purposes of this decision, however, it may be assumed that Kauffman did on July 12, 1913, assign to Totten all his dramatic rights including the moving picture rights.

On December 4, 1913, Kauffman assigned to complainant the exclusive right to make motion pictures, which assignment was duly filed and recorded in the Library of Congress January 6, 1914, and on January 13, 1914, application for copyright of said motion pictures was duly filed.

[4, 5] Defendant claims the right to produce moving pictures under assignment from Totten. The assignment of copyright from Kauffman to Totten was not recorded as required by section 44; therefore it was void as against complainant, unless the latter had notice of it. We concur with Judge Hand in the conclusion that no such notice is shown. The statement made by Kauffman to complainant's president was that Kauffman "had licensed Totten to reproduce the story as a drama, but that he had never parted with or assigned the motion picture rights." Complainant's title seems clear. Moffatt Yard & Co. had all the conceivable copyrights; they assigned to Kauffman all the dramatic rights, including both kinds; the statute contemplates separate copyrights for each kind. The assignment of the one kind to the complainant, wholly without actual notice that Kauffman had ever parted with his rights of that kind to any one, and without any recorded assignment of them to give constructive notice, gave it clear title to a copyright in the motion picture arrangement of the story of the novel.

Appellant suggests various propositions which are not here for discussion. Complainant is not trying to enjoin an old-style dramatization of the story acted on the stage, but merely a threatened motion picture arrangement to which its copyright gives it exclusive right.

As to the recording section 44, we find it difficult to appreciate complainant's point. If a book can be copyrighted, if a drama giving the story of the book can be copyrighted, if a moving picture showing such story fictionally also can be copyrighted, then each of these copyrights can be separately assigned, and must be recorded to avail of the constructive notice which the section contemplates. We fail to see how, since the amendment, a motion picture play, for which by itself a copyright may be taken, can be described merely as "an incidental right" under a copyright.

The case here presented is unlike some of those cited on appellant's brief, where the author of a book or of a play has assigned to some one all the dramatic rights thereto without reservation. Such an assignment conveys the right to acquire a copyright under the statute which will give an exclusive right to both an old-style dramatization and the modern variant, a motion picture presentation of the drama.

[6] We do not concur in Judge Hand's holding that one who has obtained statutory copyright of a book or play has left in him any common-law right in literary property by virtue of section 2 of the act. We think that section is intended only to indicate that the statute does not displace the common-law right. Whoever elects to avail himself of the statute, however, must be held to have abandoned his common-law right.

Order affirmed, with costs of appeal.