*710 OPINION.
Arundell:
The issue presented is whether the petitioner, a nonresident alien, is taxable on the rentals or royalties which he received in the manner set forth in our findings of fact. Some of the income originally contested is now conceded to be income from sources within the United States, and as such subject to income tax. In view of these concessions, we have confined our findings to those contracts which we understand are those from which the presently disputed income was derived, namely, the contracts with the Houghton Mifflin Co., the contracts relating to five motion pictures, and the contract with Wagner concerning the dramatization of “ Scaramouche.” The amount of income from these contracts is not in evidence, but the parties are agreed that they can and will determine it upon our decision as to whether such income is taxable.
The questions presented involve the construction of sections 212(a) and 119 (a) (4) and (c) (4) of the Revenue Act of 1928 and corresponding provisions of earlier statutes. The pertinent parts of these sections of the 1928 Act are:
Sec. 212. (a) General rule — In the case of a nonresident alien individual gross income includes only the gross income from sources -within the United States.[1]
* ***** *
Sec. 119.[2] (a) Gross income from sources in United States. — The following items of gross income shall be treated as income from sources within the United States:
*******
(4) Rentals and Royalties. — Rentals or royalties from property located in the United States or from any interest in such property, including rentals or royalties for the use of or for the privilege of using in the United States, *711 patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like property; and
*******
(c) Gross income from sources ivithout (he United States. — The following items of gross income shall be treated as income from sources without the United States:
* * * * * * *
(4) Rentals or royalties from property located without the United States or from any interest in such property, including rentals or royalties for the use of or for the privilege of using without the United States, patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like properties; and
❖ * * ’ * * * *
Petitioner’s view is that the contracts involved the sales of personal property in the form of rights to his literary productions, and that such sale took place in England, inasmuch as he executed the contracts in that country. On this premise he argues that the income received under the contracts was not “ gross income from sources within the United States” within the meaning of section 212 (a), above quoted.
The rights granted- under the contracts executed by petitioner did not amount to sales of his property. “ A sale of personal property when completed, transfers to the purchaser the title to the property sold.” Whitfield v. United States, 92 U. S. 165, 170. He did not part with title to his manuscripts nor did he sell or assign his copyrights. In fact, it is stated in some of the contracts that copyrights could not be obtained, and in some of the others it is at least doubtful whether petitioner had copyrights, in view of the provisions authorizing the Houghton Mifflin Co. to take out copyrights. It may be conceded that whatever rights petitioner had in his compositions were personal property, but we fail to see wherein granting the privilege of publication or other exploitation amounted to a sale. “A man can not sell his chattel by a. perfected sale, and still remain its owner.” Butler v. Thompson, 92 U. S. 412, 415. It is quite obvious from the contracts themselves that the Houghton Mifflin Co. did not contract to buy petitioner’s writings outright with all rights therein, but contracted to pay him royalties on sales in the United States. Petitioner reserved to himself all rights of translation and all rights to market his books in countries other than the United States, and it seems he also reserved all motion picture and dramatic rights.
The payments made to petitioner for the right to reproduce his compositions seem to us to be clearly rentals or royalties for the use of property. Whether they were technically “ rentals ” or “ royalties ” is immaterial, for if they were either one they constituted income. “ Eoyalties, like rent, are inherently income and have been commonly so considered.” Estate of Ernest Gustav Hoffman, 8 *712 B. T. A. 1272. Moreover, the statute here specifically includes “ rentals and royalties ” in income. Nor is it necessary to determine whether the payments were made for the use of copyrights which we assume were obtained by Houghton Mifflin Co. under some of its contracts. Petitioner undoubtedly had a property right of some kind in his writings, and as such comes within the statutory phrase “ other like property.” Payments based on earnings made for the use of a secret process are income. Kaltenback v. United States, 66 Ct. Cls. 581; likewise payments for the right to manufacture and market an invention with application for patent pending, Frank W. Elliott, 24 B. T. A. 5, and payment in stock for a license under patents, Superheater Co., 12 B. T. A. 5; affd., 88 Fed. (2d) 69. The application of the statute does not turn upon the place of execution of the contract for the use of property; that is not mentioned. The vital element is that the payments be made “ for the use of or for the privilege of using [property] in the United States.” That, as we understand the arrangement between petitioner and the publishers, is the situation here. The substance of the contracts is that under them petitioner granted to the publisher the right to publish his books in the United States upon payment to him of the specified royalty upon each book sold in the United States. In other words, if no books had been sold in the United States there would have been no income. When the petitioner conveyed a restricted interest in his books to the Houghton Mifflin Co., reserving to himself a royalty on all sales in the United States, that interest became/ property located in the United States, and the income therefrom is of the kind described in section 119(a)(4). We see no occasion for attempting a strained construction of section 119 for the purpose of placing the income from sales in the United States in a nontaxable classification. Cf. Helvering v. Stockholms Enskilda Bank, 293 U. S. 84.
What we have said above applies alike to those publications which were subject to copyright and those which were not. It also applies to the income under the contract granting to Wagner the right to dramatize “Scaramouche.” Under the Wagner contract, as in the case of the Houghton Mifflin Co. agreements, there would have been no income to petitioner, save perhaps the down payment of $500 in the nature of an advance royalty, unless the American public had patronized the theatres where the play was produced. All income derived by petitioner as royalties from this dramatization constituted taxable income to him.
The situation respecting the granting of motion picture rights is quite different from the other rights above discussed. In none of the motion picture contracts did petitioner obtain any income from the re *713 production and sale or other use of his writings in the United States as in the case of the Houghton Mifflin Co. and Wagner contracts. Here the granting of rights was m,ade in consideration of a lump sum. The sale of these rights took place in England (cf. Compania General, etc. v. Collector, 279 U. S. 306), and there was no subsequent income in the nature of rents or royalties from sources within the United States. We are accordingly of the opinion that the lump sums received by petitioner for the motion picture rights do not come within the statutory definition of income from sources within the United States and are not taxable income.
We note in passing that the contract with Wagner was not confined to the dramatization in the United States, but also granted Canadian rights. The statute which we have above held applicable relates only to income for the use of property in the United States, and further, section 119 (c) (4) of the act treats as income from sources without the United States rentals or royalties for the use of property without the United States. As the parties have agreed that they can make a computation if the question presented is decided, they may exclude from income on recomputation the Canadian receipts, if any, under the Wagner contracts.
The respondent has asserted 25-percent penalties for the years 1921 to 1925, inclusive, on account of petitioner’s delinquency in filing returns. There is no evidence in this case of any “ reasonable cause ” for the delinquency which would warrant setting aside the penalty. Petitioner was represented in this country and undoubtedly could have obtained a ruling as to the taxable status of the payments he was receiving from within the United States. In the absence of a showing of reasonable cause we have no course but to sustain the imposition. See Charles E. Pearsall & Sons, 29 B. T. A. 747; Berlin v. Commissioner, 59 Fed. (2d) 996.
Reviewed by the Board.

Decision will l>e entered- wider Rule 50.

 Tile same provisions appear in tile earlier acts. Sec. 213 (c), Revenue Acts of 1921, 1924, and 1926.

 The same provisions, with immaterial differences, appear in section 217 of the Revenue Acts of 1921, 1924, and 1926.