## GOLDSMITH et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 88.

Circuit Court of Appeals, Second Circuit.
June 14, 1944.

Michael Halperin, of New York City, (Montgomery B. Angell, Marvin Lyons, and Solomon Granett, all of New York City, of counsel), for petitioners-Appellants.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Robert N. Anderson, and Harry Baum, Sp. Assts. to Atty. Gen., for respondent.

Sidney R. Fleisher, of New York City, for Authors' League of America, Inc., amicus curiæ.

Weinberger & Wayne, of New York City (Harry Weinberger and Nathan L. Schoichet, both of New York City, of counsel), for Eugene O'Neill, amicus curiæ.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The petitioners are a husband and wife who filed joint income tax returns for 1938 and 1939. In each year payments made to the husband by Paramount Pictures, Inc., for an assignment of the exclusive motion picture rights in a play which the husband had written and on which he had been granted a statutory copyright were reported as capital gains resulting from a sale of capital assets. The Commissioner treated such payments as ordinary income and determined a deficiency for each year accordingly. The Tax Court sustained that determination on two grounds, viz., that the amounts received were royalties and in the alternative that if they were receipts from a sale of property they were not from the sale of a capital asset as that term is defined in § 117(a) (1) of the Revenue Act of 1938, 26 U.S.C.A.Int.Rev.Code, § 117 (a) (1), since if any property was sold it was of a character subject to the allowance for depreciation provided for in § 23(l) of the same Act.

The play which Mr. Goldsmith had written was called "Enter to Learn" and the copyright on it was granted to him on July 7, 1936. He later revised that play in collaboration with one Taylor without, how-

ever, materially changing the plot or principal characters, and called the revision "What A Life." It was then successfully presented on the stage. It is the only play the author has written, though he has since written many radio scripts in which characters that appeared in the play are featured. In his income tax returns he stated that he was a playwright, and the Tax Court so found. The copyright on the play was treated as property used in his business in reaching the conclusion that it was not a capital asset within the definition of § 117(a) (1) of the 1938 Act.

More than two years after the copyright was granted, Mr. Goldsmith disposed of what are called the exclusive motion picture rights by assigning them to Paramount Pictures, Inc. He also granted to the assignee the right to assign them to others and agreed to permit it to sue in his name, but for its own benefit and at its own risk and expense, to enjoin infringement of any of the rights granted and to recover damages for infringement.

There can be no doubt that a copyright owner can assign separately to whomsoever he may desire one or more of the sum of the separable rights which together make up the copyright property. Photo-Drama Motion Picture Co., Inc., v. Social Uplift Film Corp., 2 Cir., 220 F. 448; Westway Theatre, Inc., v. Twentieth Century Film Corp., D.C., 30 F.Supp. 830, 835, affirmed 4 Cir., 113 F.2d 932. But when he does split off such rights by assignment the assignee does not become the owner of the copyright itself and acquires only what lesser rights are granted by the terms of the assignment. Goldwyn Pictures Corp. v. Howells Sales Co., 2 Cir., 282 F. 9

When by those terms the assignee acquires less than the sum of all the rights which together make up the copyright which as a whole is property and may be conveyed as such, it does not matter whether he is called an assignee in the instrument or whether that is called an assignment or something else. If he gets only the rights of a licensee, the so-called assignment amounts only to a license. M. Witmark & Sons v. Pastime Amusement Co., D.C., 298 F. 470, affirmed 4 Cir., 2 F.2d 1020. And when that is so the amount which the assignee pays for what he gets is for tax purposes to be treated as ordinary income to the recipient because it is in fact royalty income. Unless the assignment conveys to the assignee the title to the copyright, no course of * * * business" when the

sale of property is made. Sabatini v. Commissioner, 2 Cir., 98 F.2d 753.

In this instance there was no sale of the copyright since title remained in the assignor and therefore no asset, capital or otherwise, was sold. The assignee obtained only the rights of an exclusive licensee by virtue of the assignment, and the amounts it paid for those rights which were reported for taxation as capital gains were royalties and were properly taxed as ordinary income when the Commissioner audited the returns. Sec. 23(a) of the Revenue Act of 1938. I would affirm the decision on this ground alone.

My brothers, however, concur in the result for other reasons which are stated in the concurring opinion of Judge L. Hand.

Affirmed.

L. HAND, Circuit Judge (concurring).

■ I do not think that the copyright or the literary property in the case before us was "property, used in the trade or business, of a character which is subject to the allowance for depreciation," within § 117(a) (1); nor does it seem to me to be material that the exclusive license which the author granted to the Paramount Company did not convey "title" to either, as I assume it did not. I do think that both were "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." That Clifford Goldsmith was in "business" as a playwright, we have his own word for; and, although he had written only one play, he spent his time in exploiting it in various ways, in which he was very successful. This he did by licenses to producers of a stage play, by licenses to broadcasters and by the licenses to moving picture producers, whose proceeds are here in suit.

■ Copyright and literary property are monopolies; they entitle the owner to prohibit various kinds of reproduction, and to relieve individuals of these prohibitions by licenses. The licenses may do no more than excuse what would otherwise be infringements; or they may be exclusive, as in the case at bar. An exclusive license requires the author to protect the licensee against other infringement, and is for most purposes treated as "property". I think that it is "property" within § 117(a) (1); that its grant is a "sale"; and that the licensee is a "customer in the ordinary course of * * * business" when the

468

author is in business. There can be none but a verbal objection to this interpretation, for the general purpose of the section is plain enough. All property "held' by the taxpayer" is capital assets, but there are some kinds which he does not figure in separate items, when he parts with them in the course of "business". One kind is "stock in trade," or whatever else is normally included in an inventory. It would be absurd to expect of such items that a separate "gain or loss" should be kept as to each of these; and probably it would be impossible. An inventory supplies the place of such separate accounting, treating the whole stock or fund as though it were an entity. Again, it would be unreasonable to require a taxpayer to keep track of those chattels or other personalty, which are not sold "in the ordinary course of * * * business," but are used as equipment or gear. These may be amortized by depreciation, which enters into his general income, as does his sale of such of them as he does not use up.

These two classes will exhaust the property "held" in many businesses; but there may also be goods which are neither "stock in trade," nor of a kind which would ordinarily be inventoried. Nevertheless, the business may consist of selling these goods in "ordinary course", to those whose custom the taxpayer seeks; and these are his "customers." That the purpose of Congress was also not to treat such transactions as "capital gains or losses" is patent. Although each transaction is the sale of "property held by the taxpayer," it is not considered as separate, but the transactions are all massed together for tax purposes as a single source of ordinary income, quite as though the taxpayer were giving his services for hire upon separate occasions. How numerous such transactions must be the statute answers only by the test that collectively they must constitute a "trade or business." This being in my judgment what the section was aiming at, I see no reason to balk at the words used. It does not unduly strain the meaning of "sale" to make it include an exclusive license; in the case at bar the parties themselves used the words, "grant and assign"; and it would be a barren distinction—meaningless for fiscal purposes,— to say that the royalties for a stage production (which these taxpayers included in their gross income) were income, but that the lump sums, paid instead of royalties by the Paramount Company, were capital transactions, because they were not "sales".·

I can find nothing in the history of the legislation which intimates the contrary of this construction, and it seems to me that the Board in Avery v. Commissioner, 47 B.T.A. 538, chose the better ground than did the Tax Court here.

There is no reason to ask for any further findings of fact; I rely only upon those which the Tax Court has found. My only difference with it is that I find that the facts bring the case within the next to last, and not within the last, clause of § 117(a) (1). For these reasons I concur.

I am authorized to say that Judge SWAN concurs in this opinion.