Daniel M. CORY and Margot Cory, his wife, Petitioners-on-Review,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-on-Review.

No. 195, Docket 23790.

United States Court of Appeals
Second Circuit.

Argued Feb. 14, 1956.

Decided March 9, 1956.

Washburn, Gray & Jones, New York City, Watson Washburn, New York City, of counsel, for petitioners-on-review.

H. Brian Holland, Asst. Atty. Gen., Lee A. Jackson, Morton K. Rothschild, Washington, D. C., for respondent-on-review.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

FRANK, Circuit Judge.

1. The sole issue is whether the amount of income reported in 1944, as de-

rived from Santayana's "Persons and Places," constituted ordinary income or a long term capital gain. In answering, we must decide whether the transaction between Cory and Scribner's constituted a "sale" or merely the granting of a license.

The Tax Court held that Cory gave Scribner's a license. That Court based its decision, in part, on the fact that a part only of the "bundle of rights" inhering in the copyright was transferred to Scribner's, since Cory assigned neither foreign publishing rights (other than Canadian) nor movie or dramatic rights. Furthermore, the Tax Court found that Cory had not transferred the first serial rights even for the United States and Canada. In addition, the Tax Court held there was no "sale" because no definite price was fixed for the transfer: Payments to Cory were to be measured by future sales of the book. The evidence supports the Tax Court's findings which are, therefore, not "clearly erroneous."

The Tax Court thought the previous pertinent decisions not too clear. This difficulty, and its bearing on Cory, would have interested Santayana, with his sense of irony, his detachment, his mockery of "the runner's heat with gentle wonder and laughter sweet," his emphasis on human limitations and on individual human perspectives,[1] his view that human knowledge "is a torch of smoky pine that lights the pathway but one step ahead," his jibes at the common belief that opaque language must denote "profound knowledge," his smile at efforts to "grope for a deep truth in * * * obscurity."[2]

■ To grope our way through obscurity, in this area, we must put to one side, as irrelevant here, cases dealing with the taxation of transfers of interests in copyrights (or patents) by nonresident aliens:[3] The decisions in those cases interpreted Sections 211 and 212 of the 1939 Internal Revenue Code, 26 U.S.C.A., and similar provisions in the prior acts, which embodied the Congressional purpose to tax "those kinds of income" of such aliens "which had been found to be readily withholdable at their * * * sources", as the Supreme Court remarked in Commissioner of Internal Revenue v. Wodehouse, 337 U.S. 369, 388–392, 69 S.Ct. 1120, 1130, 93 L.Ed. 1419. Quite different is the Congressional purpose embodied in Section 117 covering capital gains, since that section does not ordinarily apply to non-resident

---

1. He wrote that, "since the station, faculties, and passions of all men are not identical," their "pictures" of events "will not be identical * * * The same battle in the clouds will be known to the deaf only as lightning and to the blind only as thunder * * *"

2. These readers of his Autobiography who receive an impression of Santayana as self-absorbed to the point of excessive selfishness, will be surprised by his letter of August 22, 1941, to Wheelock, Scribner's representative, which reads as follows:

   "In your kind letter of July 30 you say your firm is disposed to advance the payment of my royalties to Cory, if he should ever need such assistance. I am very glad to know this; because I feel partly responsible for having kept him out of steady employment during the best years of his life. * * * It happens to be difficult for me for family reasons to leave Cory any legacy or to help him out of the money in charge of my nephew George Sturgis, which is largely Sturgis money in origin. But I feel free to dis-

   pose of my earnings, including my royalties; and for this reason (as I don't need them) I have asked you to let him have them during this war, when my private bank account in London is congealed. In case of my death, however, he might be in at least monetary difficulties; and I am not sure that my royalties could then legally go to him. For this reason I mean to give him my MSS including that of my autobiography, and am expressly leaving them to him in my Will. He will then make the contract for publication with you, and have a right to the royalties."

3. Rafael Sabatini, 32 B.T.A. 705, affirmed 2 Cir., 98 F.2d 753; Estate of Alexander Marton, 47 B.T.A. 184; Sax Rohmer, 5 T.C. 183, affirmed 2 Cir., 153 F.2d 61; Pelham C. Wodehouse, 8 T.C. 637, reversed, 4 Cir., 166 F.2d 986, reversed 337 U.S. 369, 69 S.Ct. 1120, 93 L.Ed. 1419; Misbourne Pictures, Ltd., v. Johnson, 2 Cir., 189 F.2d 774, affirming D.C., 90 F. Supp. 978; E. Phillips Oppenheim, 31 B. T.A. 563; Bloch v. United States, 2 Cir., 200 F.2d 63.

aliens. Accordingly, as we have previously several times observed,[4] other considerations must guide our determination whether the profit resulting from a transfer by a citizen of interests in copyrights is a capital gain or ordinary income.

In Commissioner of Internal Revenue v. Wodehouse, supra, the Supreme Court apparently accepted the contention that it did "not properly reach the fine questions of title, or of sales or copyright law, * * * as to the divisibility of a copyright, or as to the sale of some interest in a copyright." But here we must consider such "fine questions."

In Goldsmith v. Commissioner, 2 Cir., 143 F.2d 466, 467, a case involving a citizen taxpayer, Judge Learned Hand, speaking for the majority held that the transfer of part of the bundle of rights (making up the copyright) for a definite sum, yielded a sale. However, he concluded that the vendor, a professional author, held the interests in the copyright " 'for sale to customers in the ordinary course' " of his business, and were hence excluded from the definition of a capital asset in Section 117(a) (1) (A).

Mr. Justice Frankfurter, dissenting in Wodehouse, and speaking for two other Justices, approved Judge Hand's ruling in Goldsmith. He maintained that the crucial test of sale was not whether the transfer included the entire bundle of rights but whether there had been a transfer "absolutely" of a "distinct right conferred by the Copyright Law" under "terms of payment which do not depend on future use by the transferee." See 337 U.S. at pages 423–424, 69 S.Ct. at page 1146. The majority of the court in Wodehouse rested its decision on the interpretation of the peculiar provisions of the Code relating to non-resident alien individuals. Accordingly, the majority did not express any lack of agreement with Mr. Justice Frankfurter's rejection of the theory of the "indivisibility of the copyright." See also Herwig v. United States, 105 F.Supp. 384, 122 Ct.Cl. 493; Fulda, Copyright Assignments and the Capital Gains Tax, 58 Yale L.J. 245 (1949); cf. Fields v. Commissioner, 2 Cir., 189 F.2d 950.

If we adopt the reasoning of Judge Hand and Mr. Justice Frankfurter, it follows that the mere fact that Cory transferred less than his entire bundle of rights does not automatically brand this transaction as but a license.

However, it does not necessarily follow that, therefore, the transaction was a sale. For here the transaction lacked an element implicitly considered in Judge Hand's opinion in Goldsmith, supra, and explicitly stressed by Mr. Justice Frankfurter in Wodehouse: At the time of the transfer, the amount of payments to the transferor remained indeterminate, dependent wholly on the sales of the book by the transferee.

■ We do not now decide that a transfer by a citizen of but a part of the bundle for a definite sum, or a transfer of the whole for an indeterminate sum, is a sale for purposes of Section 117.[5] We do hold that when, as here, the transfer is both (1) a transfer of a part of the cluster of rights and (2) for an amount wholly indeterminable at the time of the transfer, no such sale occurs.

Affirmed.

---

4. See e. g. Rohmer v. Commissioner, 2 Cir., 153 F.2d 61, 65; Bloch v. United States, 2 Cir., 200 F.2d 63, 66. In Goldsmith v. Commissioner, 2 Cir., 143 F.2d 466, 467, the majority opinion ignored Sabatini v. Commissioner, 2 Cir., 98 F.2d 753 which related to a non-resident alien. See also Herwig v. United States, 105 F. Supp. 384, 387, 122 Ct.Cl. 493.

5. The taxpayers cite Commissioner of Internal Revenue v. Hopkinson, 2 Cir., 126 F.2d 406 and TeLinde, 18 T.C. 91 as authority for their contention that the transfer of a copyright interest for a price to be fixed by the future profits can constitute a sale. In Hopkinson, this court held that the transfer of a patent was a sale, despite the fact that payment turned on future sales. In Te-Linde, the Tax Court held similarly in dealing with the transfer of a copyright. However, in both cases the taxpayers transferred the entire bundle, so that they no longer retained any interest in them. They had only the right to receive periodic payments of money.