Desmond, Oh. J.
In 1954 Charles Vidor, a producer of motion pictures, made a written agreement with defendant Eomola Nijinsky whereby Mrs. Nijinsky purported to sell to Vidor the exclusive motion-picture, television, radio and allied rights in two books written by Mrs. Nijinsky, of both of which she held the recorded copyright, and which described the life and works of her late husband, the famous ballet dancer Vaslav Nijinsky. Concurrently with that agreemlEt, Mrs. Nijinsky gave Vidor a separate instrument of assignAnt of the same rights. The assignment was recorded in thAlnited States Copyright Office (see U. S. Code, tit. 17, § 30) a fljv days later.
This suit was brought by Vi Ac (his executrix is now plaintiff) for a declaratory judgmei^Arst, that plaintiff is the sole owner of the motion-picture a^Vallied rights in the literary works above referred to; and,second, that neither defendant Basil N. Bass (his executoáfI'M-/mbw substituted as defendant) nor defendant Oscar Serlinmak'yhv/such rights in the two books. Bass and Serlin by answer)AAB' alleged rights of theirs as based on an agreement made^^Kirch, 1940 between Bass and Mrs. Nijinsky (assigned by-B^^Ao Serlin in November, 1940). Also, they served on Mrs. Nijlffilfy a cross complaint in which they asked for damages agajiÉPner because she had twice sold the rights in question and hApkus cast a cloud on their rights and caused them damage andput them to expense.
It is conceded that the Nijinsky-Bass agreement was not recorded in the Copyright Office until long after Vidor’s assignment was so recorded pursuant to the applicable Federal statute (II. S. Code, tit. 17, § 30, supra). Defendants Harlow (executor of the Bass will) and Serlin argue, however, that the former instrument was not an “ assignment of copyright ” but a mere license as to the motion-picture and allied rights (coupled with an agreement making Bass the booking agent of Mrs. Nijinsky for a proposed American lecture tour) and that, as such, it could be, but was not required to be, recorded under the statute (U. S. Code, tit. 17, § 30, supra). They assert that the lack of record *508 ing did not invalidate the license and that it effectively transferred all the rights of Mrs. Nijinsky. Furthermore, say Berlin and Bass’ executor, Vidor took his assignment with knowledge or notice of the prior equities of Berlin as assignee of Bass, and Vidor’s failure to use due diligence in inquiring as to Berlin’s position is fatal to Vidor’s (or his estate’s) claim. Mrs. Nijinsky’s answer argued that her contract with Bass was an instrument capable of statutory recordation and should have been recorded so as to give notice, that Vidor as a bona fide purchaser without notice became sole owner of the motion-picture rights and that Berlin and the Bass estate, because of their alleged breaches of their agreement with her and because of their concealments of the relationship bjgj$ween Bass and Berlin, etc., can have no relief against her. £
There was a trial (Justice (Beenberg without a jury) which ended in findings as follows: shat the Bass-Nijinsky contract was an instrument capable ofjaling recorded as was the BassSerlin assignment thereof, thjj^Beither was recorded until more than six months after VidoJ^Brecording and that Vidor had neither actual notice thereoflBr notice implied by law, that the Vidor-Nijinsky agreement v and assignment were duly recorded in the Copyright (Qffiee, ^hat plaintiff owns all the disputed rights and that nei'1j|*eW Bass estate nor Berlin has any motion-picture or simildl^^^Bs in the two literary works. The Trial Judge did not pail^^Bhc Bass-Nijinsky agreement issues but found that Mrs. N$pPPy never knew of the relationship between Bass and Berlin tstimisented to the assignment by the former to the latter. Thejjepnent subsequently entered was to the effect that the assignment from Bass to Berlin was ineffective, that plaintiff owns the motion-picture and allied rights and that defendants Berlin and Bass’ executor have no such rights.
On appeal, the Appellate Division affirmed except that it added to the judgment, by modification, a dismissal of the cross complaint against Mrs. Nijinsky, explaining in a memorandum that the Bass-Serlin assignment was ineffective because the dramatic rights given by Mrs. Nijinsky to Bass were not separately assignable without her consent which was never given and that, in any event, 1 ‘ whatever rights Berlin or his assignor might have acquired were lost as the result of the breach *509 of Bass’ managerial obligations under the purported agreement
No one doubts that Vidor’s assignment was recordable and properly recorded. Appellants, nevertheless, say that the recording act did not give Vidor priority over Bass, since, so they argue, the Nijinsky-Bass document was at most a license, not an “ assignment ” of the sort described in section 30 of title 17 of the United States Code. Their submission is that such a nonrecordable license loses nothing by the statute and that its priority in time gives it priority in rank. The first answer is in the Nijinsky-Bass contract itself since in terms it “ assigns ” to Bass “ any and all rights ” of Mrs. Nijinsky. A more complete answer is in the controlling case of Photo-Drama Motion Picture Co. v. Social Uplift Film Corp. (220 F. 448, 449, 450 [C. C. A. 2d]) which says that a separate conveyance of motion-picture rights “must be recorded to avail of the constructive notice which the section contemplates. ’ ’
It is, therefore, clear enough that, since Vidor did record his assignment, his rights thereunder are prior to any rights of the Bass estate or Serlin, unless Vidor had knowledge or notice of the Nijinsky-Bass and Bass-Serlin documents — that is, of Serlin’s claims. We will assume that if Vidor had knowledge of facts putting him on inquiry, he would not be a bona fide purchaser, regardless of recording. But. the trial court here made findings, affirmed by the Appellate Division, that Vidor had no knowledge or actual or implied notice of Serlin’s claims. Those findings have support in the record. Vidor denied ever having-had notice. Before signing with Mrs. Nijinsky he had retained attorneys to clear the title and was told by the attorneys that it was “clear”. One of the reports from an attorney included newspaper and theatrical trade paper items to the effect that Serlin owned performing rights to the book “Nijinsky” but, as Vidor testified, these “ publicity releases ” did not necessarily have any significance as to actual truth. When Vidor learned that the original copyright was held by a book publisher, he arranged to get from the publisher an assignment containing no exceptions. Mrs. Nijinsky in her assignment to Vidor warranted that she had not granted the rights to anyone else. There is testimony of an ‘ ‘ invariable custom ’ ’ whereby one who acquires motion-picture rights files an assignment in the Copy *510 right Office. On the whole record it. cannot be said that Vidor had knowledge of Serlin’s rights or claims or such notice as required him to make other inquiries. The findings, therefore, that Vidor was a bona fide purchaser for value are well based and sufficient to give Vidor clear priority over Serlin as to ownership of the motion-picture rights.
As between Serlin and Mrs. Nijinsky also, there is support for the judgment in favor of the latter. The trial court held that no consent to or ratification of the Bass-Serlin assignment ever came from Mrs. Nijinsky. Clearly, there was evidentiary basis for the latter holding. As to the necessity for consent, the document which says nothing about assignment seems to be an entire contract, providing not only for the transfer to Bass of some rights to the books but calling also for the performance by Bass of services as booking agent for an American lecture tour.
The Appellate Division, as we have seen, went farther than the trial court and made a new fact finding (see Bernardine v. City of New York, 294 N. Y. 361, 366) that Bass had breached his “managerial obligations”. There is ample proof that he did little or nothing in that direction and that he got no lecture engagements at all. This brings us to another ground for holding that Bass-Serlin could not have priority rights as against Vidor. Since it has been established in this very lawsuilt that neither Bass nor his attempted assignee Serlin ever performed their agreement with Mrs. Nijinsky at all, that adjudication is available not only to Mrs. Nijinsky but to Vidor, too (see Israel v. Wood Dotson Co., 1 N Y 2d 116). It is, therefore, still another reason for defeating the Bass-Serlin claim to priority over Vidor.
The judgment should be affirmed, with costs to respondents against appellants.
Judges Dye, Fuld, Froessel, Vast Voorhis, Burke and Foster concur.
Judgment affirmed.