RICHCAR MUSIC Co., a Division of Frandel Music, Inc., Appellant-Respondent, v CHRIS TOWNS et al., Copartners Doing Business Under the Name of SAH MUSIC COMPANY, et al., Respondents-Appellants, and GILSAN MUSIC CORP., Respondent.

First Department, July 20, 1976

*Norma Hack* of counsel *(M. William Krasilovsky* with her on the brief; *Feinman & Krasilovsky,* attorneys), for appellant-respondent.

*Robert C. Osterberg* of counsel *(Abeles Clark & Osterberg,* attorneys), for Chris Towns, respondent-appellant.

*Abraham L. Wax* for Clarence A. Henry, respondent-appellant.

*Stephen F. Huff* of counsel *(Pryor Cashman & Sherman,* attorneys), for Ensign Music Corporation, respondent-appellant.

KUPFERMAN, J. P., We are here concerned with the rights in the musical composition "You've Got To Change Your Evil Ways", also known as "Evil Ways", and with the proceeds derived therefrom.

The author of the song is Clarence A. Henry, also known as Sonny Henry. He wrote it in or about 1957, appropriately enough while serving a prison sentence for second degree murder. After his release from jail (he was incarcerated at the age of 15), he worked with a band as a guitarist and music arranger. The band was under the leadership of one William Correa, professionally known as Willie Bobo. In 1967, having learned that Bobo proposed to record "Evil Ways", Henry registered a claim to statutory copyright for an unpublished musical composition and received from the Register of Copyrights a certificate dated April 13, 1967.

The defendant Chris Towns is a half brother of Henry's and had his own music company and familiarity with the music business, and he claims that he obtained for Henry the copyright office "E" application (see Rules and Regulations of the Copyright Office, 37 CFR 202.8), and that he instructed Henry how to complete this relatively simple form. Thereafter, in June, 1967, Bobo recorded "Evil Ways" and another of Henry's compositions on the MGM Verve phonograph record label. Henry participated in the recording thereof as a musician and as an arranger of the music. It is from this that the

unfounded claim of the defendant Gilsan Music Corp. is derived. Bobo, along with others, was a principal in Gilsan, and the label on this record showed Gilsan Music Corp. as the publisher of the song. The trial court properly gave short shrift to this claim, and there has been no appeal from it.

The Bobo record achieved no success. However, when Henry learned that Gilsan was wrongfully claiming to be the publisher of the song and of others of Henry's works which Bobo had recorded, he sought advice from his brother Towns as to how to protect himself against Gilsan's claim. Towns advised Henry to file a notice of use (see US Code, tit 17, § 101, subd [e]) and furnished to him and assisted him in completing this relatively simple copyright office "U" form (Copyright Office Rules and Regulations 37 CFR 202.18).[1]

Towns counselled Henry to form his own company for the publication of his song and made the necessary arrangements for the formation of Sah Music Company early in 1968, Sah being the acronym of Sonny A. Henry's name. Henry then signed publishing contracts with Sah for "Evil Ways" and the other musical compositions which Bobo had recorded, and Towns became a partner in Sah, for which company a business certificate was filed in the New York County Clerk's office.

Shortly after the Bobo recording in June, 1967 and before the formation of Sah, Henry met Richard Carpenter, an officer of Richcar Music Co., the plaintiff, at a bar frequented by musicians, and it is contended, and the trial court so found, that at that time he sang "Evil Ways" as well as another musical composition to Carpenter and then went to Carpenter's office where he executed a publishing contract, assigning the rights in both songs to Richcar under a royalty arrangement[2] with a cash advance of $100, for which Henry gave a receipt. Henry did not tell Carpenter about his previous copyright of the unpublished work nor of the Bobo record nor did he give him any written music or lyrics.

It is claimed that Carpenter of Richcar on several occasions requested of Henry a "lead sheet" (a written representation of the melodic line and words of a song), but received none and for that reason did not record his assignment in the Copyright

---

1. In order to enforce the right to collect future mechanical (recording) royalties under the copyright act's compulsory licensing provisions, once a song has been recorded, a notice of use must be filed in the Copyright Office.

2. See Shemel and Krasilovsky, This Business of Music (1964) at 373-378.

Office (US Code, tit 17, § 30) or do anything to exploit the music.

Towns took care of whatever business arrangements were necessary for Sah, including having Sah affiliate with Broadcast Music, Inc. (BMI) for the purpose of obtaining royalties for public performance, if any, of the music.[3] BMI paid an advance of $5,000, of which Towns received $2,500. However, because of conflicting claims to the song, there was a problem as to collecting public performing rights royalties at BMI. Towns was not told by Henry, his partner and half brother, of his assignment to Richcar.

None of the foregoing would be of any real interest, except for the fact that in 1969 a musical group known as Santana recorded the song on the Columbia Record label under the title "Evil Ways", and it was a tremendous success.[4] Here again, the original jacket for the record with the song and the label credited someone else as the author and publisher. It seems that a different song, also entitled "Evil Ways", written a number of years before, was mistakenly believed to be the one recorded.

In 1970, with "Evil Ways" a success, Towns recommended to Henry that an arrangement be entered into with the defendant Ensign Music Corporation (a subsidiary of Gulf & Western). A two-year contract, retroactive to January 1, 1970, was entered into in March, 1970 between Sah and Ensign, confirmed by Henry, for Ensign to handle world rights in five musical compositions listed in a schedule to have been authored by Henry, all registered as unpublished works in the Copyright Office. The ownership of the rights was warranted by Sah and Henry, and Ensign had no knowledge of Richcar's claim. Ensign, among other things, was to receive 15% of the United States and Canada income, and 50% of the income abroad. It advanced $1,500 to Sah and $1,500 to Henry as author, against the accumulated royalties that would be due to them. However, Towns took $1,500 and Henry $1,500 because of their understanding that they would split advances

---

3. There are several organizations in the music business, which administer the public performing rights for musical compositions, of which BMI is one. They have both publisher and writer members, and the royalties which they collect are distributed to the writers' group and to the publishers' group. Public Performing Rights in Music and Performance Rights Societies, by Herman Finkelstein in 7 Copyright Problems Analyzed 69, 75 (CCH 1952), reprinted in Copyright Problems Analyzed (Rothman, 1966).

4. Some $200,000 in royalties is presently involved in this litigation.

from whatever source derived. Of course, the only song of consequence in the agreement was "Evil Ways", already an established hit.

In November, 1970, Henry played the Santana recording for Carpenter who recognized it. Henry then gave Carpenter a lead sheet, and Carpenter then filed a copyright registration. Supposedly, the following year, 1971, Carpenter learned of Henry's original copyright registration in April, 1967 for an unpublished musical composition, and filed an assignment claim to that 1967 copyright[5] and a notice of use.

The 1967 royalty agreement and copyright assignment between Richcar and Henry is challenged as specious by Towns and Ensign. Although Henry confirms it, there are several disturbing aspects. It was entered into in cavalier fashion without the assignee of the rights obtaining any copy, by any means preserved, audible or visual, of the property conveyed. Further, the agreement signed by both parties (Mrs. Carpenter signed for Richcar) given to Henry was not produced in court, allegedly lost by fire or theft. Only the Richcar copy was received into evidence and that one, although stated to be signed by Henry in 1967, was not signed for Richcar until 1971. Nonetheless, we adopt the finding of the trial court which, after a nonjury trial, meticulously reviewed the evidence and found as a fact that the 1967 agreement had indeed been executed.

Henry does not challenge the rights of Richcar. Under the June, 1967 royalty agreement, there was the possibility for Henry to seek to renounce that agreement for failure of Richcar to exploit the musical composition, but Henry never raised that. (See *Vidor v Serlin*, 7 NY2d 502; cf. *Dolfi Music v Drake*, 76 LRRM 2313 [Sup Ct, Spec Term, Part I, NY County, 1970].) In fact, his legal and factual position is in complete support of the Richcar claim, seemingly to his own detriment.

The trial court determined that Richcar by virtue of its prior assignment is the holder of the copyright in "Evil Ways" and subject to its royalty agreement with Henry, and we affirm. There is no obligation to register such an assignment. (See Kupferman, Copyright and Judges, 19 Bull Copyright Soc.

---

5. In addition, Carpenter loaned $2,500 in cash to Henry and took an assignment of the 1967 unpublished copyright registration as security for it (US Code, tit 17, § 28) and registered that assignment. See "Musical Copyright as Collateral in Secured Transactions", by J. Kane Ditto, 19 Copyright Law Symposium 219 (Columbia University Press, 1971, ASCAP Memorial Competition).

343, 351 [June, 1972].) It is only between a subsequent bona fide purchaser (without notice who has given consideration) who has recorded within three months of the assignment, and a prior assignee who has failed to record "within three calendar months after its execution" (US Code, tit 17, § 30) that it becomes of moment. *(Marks Music Corp. v Harris Music Pub. Co.,* 255 F2d 518 [2d Cir, 1958].)

Richcar did not record, but neither did Sah. Further, Sah gave no consideration. *(Venus Music Corp. v Mills Music,* 261 F2d 577 [2d Cir, 1958].)

While Sah, therefore, has no right in the composition, Towns has cross-claimed against Henry for the misrepresentation that he was the copyright owner of "Evil Ways". The trial court awarded Towns as against Richcar 25% of the income of "Evil Ways" less advances, and Richcar appeals. Richcar has no obligation to Sah or Towns. Towns' claim is on behalf of and as a partner in Sah as against Henry as author who breached his warranty. Towns has already received $4,-000 in advances from BMI and Ensign, which would cover normal services. If Sah received the full payment that would be due to a publisher (see *Menzel v List,* 24 NY2d 91) from that amount there would first be paid the royalty due from Sah to Henry under his songwriter's agreement with it, and then from the remainder Towns would share in the income after expenditures of this business entity, Sah. As to this, the matter should be remanded for further hearing, including, in the discretion of the Trial Judge, if necessary, a partnership accounting.

To the same extent, but limited to the two-year period of the term of its agreement, Ensign has a claim against Sah and against Henry for breach of warranty. It has also sought and been awarded $10,000 as a counsel fee as a result of this litigation for which provision is made in the agreement. It seeks, however, $24,000 in counsel fee admittedly expended. The counsel fee awarded was fair and reasonable, but it is a claim only as against Sah and Henry.

The trial court directed the appointment of a receiver to collect all sums from any source derived from "Evil Ways" and to disburse in accordance with the judgment. In our view of the case, the direction to that effect is vacated.

The judgment of the Supreme Court, New York County (STECHER, J.), entered July 29, 1975, declaring the respective rights of the parties in and to the musical composition entitled

"Evil Ways" and the proceeds thereof, should be modified, on the law and the facts, without costs and without disbursements, to remand as to the amount of damage with respect to breach of warranty in the claim of Towns as a partner in Sah as against Henry, including a partnership accounting, if the Trial Judge be so advised, and as to the amount of damage with respect to breach of warranty in the claim of Ensign against Sah and Henry, the direction for appointment of a receiver vacated, and the judgment amended to state that the amount heretofore received by Towns from advances is $4,000 rather than $5,250, and, as so modified, should be otherwise affirmed.

SILVERMAN, CAPOZZOLI, LANE and NUNEZ JJ., concur.

Judgment, Supreme Court, New York County, entered on July 29, 1975, unanimously modified, on the law and the facts, without costs and without disbursements, to remand as to the amount of damage with respect to breach of warranty in the claim of Towns as a partner in Sah as against Henry, including a partnership accounting, if the Trial Judge be so advised, and as to the amount of damage with respect to breach of warranty in the claim of Ensign against Sah and Henry, the direction for appointment of a receiver vacated, and the judgment amended to state that the amount heretofore received by Towns from advances is $4,000 rather than $5,250, and, as so modified, the judgment is otherwise affirmed.